1   MELVIN R. GOLDMAN (BAR NO. 34097)
    JORDAN ETH (BAR NO. 121617)
2   TERRI GARLAND (BAR NO. 169563)
    ALISON M. TUCHER (BAR NO. 171363)
3   RAYMOND M. HASU (BAR NO. 200058)
    MORRISON & FOERSTER LLP
4   425 Market Street
    San Francisco, California  94105-2482
5   Telephone: (415) 268-7000
    Facsimile: (415) 268-7522
6   rhasu@mofo.com

7   Attorneys for Defendants
    JDS Uniphase Corporation, Jozef Straus,
8   Anthony R. Muller, and Charles J. Abbe

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                         OAKLAND DIVISION

12

13
    SHIRLEY ZELMAN, TRUSTEE, F/B/O          Master File No. C-02-4656 CW
14  SHIRLEY ZELMAN LIVING TRUST, on behalf
    of plaintiff and all others similarly situated,   **JDSU DEFENDANTS' NOTICE OF**
15                                          **MOTION AND MOTION TO**
                    Plaintiff,              **DISMISS AMENDED**
16                                          **COMPLAINT; SUPPORTING**
            v.                              **MEMORANDUM OF POINTS AND**
17                                          **AUTHORITIES**
    JDS UNIPHASE CORPORATION, JOZEF
18  STRAUS, ANTHONY R. MULLER, CHARLES      Date:     April 29, 2005
    J. ABBE, and KEVIN KALKHOVEN,           Time:     10:00 a.m.
19                                          Ctrm:     Courtroom 2, 4th Floor
                    Defendants.             Before:   Hon. Claudia Wilken
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

NOTICE OF MOTION AND MOTION ........................................................................ 1

ISSUES TO BE DECIDED ........................................................................................ 1

INTRODUCTION ...................................................................................................... 3

STATEMENT OF FACTS .......................................................................................... 4

ARGUMENT ............................................................................................................. 6

I.     PLAINTIFF LACKS STANDING TO BRING THIS ACTION BECAUSE
       SHE DID NOT PURCHASE JDSU SECURITIES. .......................................... 6

II.    PLAINTIFF FAILS TO ALLEGE THAT DEFENDANTS'
       STATEMENTS WERE "IN CONNECTION WITH" HER PURCHASE. ............... 9

       A.     JDSU's Statements About Its Operations Were Not "In Connection
              With" Plaintiff's Purchase of GOAL Notes Issued by UBS AG. ........ 10

       B.     JDSU's Statements in April and May 2001 Were Not "In
              Connection With" Plaintiff's Purchase in March 2001. ..................... 12

III.   PLAINTIFF FAILS TO ALLEGE PARTICULARIZED FACTS
       SHOWING THAT SHE ACTUALLY RELIED ON JDSU'S
       STATEMENTS OR THAT SHE IS ENTITLED TO A PRESUMPTION
       OF RELIANCE. ........................................................................................... 14

IV.    PLAINTIFF FAILS TO ALLEGE WITH PARTICULARITY FACTS
       RAISING A STRONG INFERENCE OF SCIENTER, SINCE THE
       FACTS SHE ALLEGES CONCERN EVENTS WELL BEFORE THE
       CLASS PERIOD. .......................................................................................... 17

       A.     Plaintiff Must Plead Specific Facts Contemporaneous to JDSU's
              April and May 2001 Statements Raising a Strong Inference of
              Scienter. ........................................................................................... 17

       B.     Stock Sales That Occurred Before September 2000 Do Not Show
              Scienter. ........................................................................................... 18

       C.     Pitre's E-mail of August 18, 2000 Does Not Show Scienter. ............. 19

       D.     Redbook Forecasts in 2000 and Unspecified Oracle Reports Do Not
              Show Scienter. ................................................................................... 19

       E.     JDSU's Restatement and Write-Downs Do Not Show Scienter. ........ 21

       F.     Plaintiff's Remaining Motive Allegations Fail to Show Scienter. ...... 21

CONCLUSION ................................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alter v. DBLKM, Inc.*,
    840 F. Supp. 799 (D. Colo. 1993) ........................................................... 14

*Anderson v. First Security Corp.*,
    249 F. Supp. 2d 1256 (D. Utah 2002) ....................................................21-22

*Arena Land & Inv. Co. v. Petty*,
    906 F. Supp. 1470 (D. Utah 1994) ........................................................... 15

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ................................................................................. 14

*Berger v. Ludwick*,
    Nos. C-97-0728 & C-97-2347, 2000 U.S. Dist. LEXIS 12756
    (N.D. Cal. Aug. 17, 2000) ....................................................................... 22

*Binder v. Gillespie*,
    184 F.3d 1059 (9th Cir. 1999) ..........................................................*passim*

*Birnbaum v. Newport Steel Corp.*,
    193 F.2d 461 (2d Cir. 1952) ...................................................................... 8

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975) .........................................................................*passim*

*Brody v. Transitional Hospitals Corp.*,
    280 F.3d 997 (9th Cir. 2002) ..................................................................... 9

*Broudo v. Dura Pharms., Inc.*,
    339 F.3d 933 (9th Cir. 2003) ..................................................................... 6

*Cats v. Protection One, Inc.*,
    No. CV-99-3755, 2001 U.S. Dist. LEXIS 25726 (C.D. Cal. June 4, 2001).........19-20

*Chem. Bank v. Arthur Andersen & Co.*,
    726 F.2d 930 (2d Cir. 1984) ..................................................................... 11

*Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*,
    353 F.3d 1125 (9th Cir. 2004) ................................................................. 18

*Freeman v. Laventhol & Horwath*,
    915 F.2d 193 (6th Cir. 1990) ................................................................... 16

*Geinko v. Padda*,
    No. 00-C-5070, 2002 U.S. Dist. LEXIS 3316 (N.D. Ill. Feb. 27, 2002)................ 17

*Gershon v. Wal-Mart Stores*,
    901 F. Supp. 128 (S.D.N.Y. 1995) ........................................................... 11

*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999) ..................................................................................... 19, 20

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ........................................................................................ 4, 13

*Hockey v. Medhekar*,
    30 F. Supp. 2d 1209 (N.D. Cal. 1998) .............................................................................. 18

*Greenberg v. Boettcher & Co.*,
    755 F. Supp. 776 (N.D. Ill. 1991) ..................................................................................... 16

*In re Apple Computer Sec. Litig.*,
    243 F. Supp. 2d 1012 (N.D. Cal. 2002) ............................................................................ 19

*In re Apple Computer Sec. Litig.*,
    886 F.2d 1109 (9th Cir. 1989) .......................................................................................... 18

*In re Clearly Canadian Sec. Litig.*,
    875 F. Supp. 1410 (N.D. Cal. 1995) ................................................................................. 12

*In re CornerStone Propane Partners, L.P. Sec. Litig.*,
    No. C-03-2522, 2005 U.S. Dist. LEXIS 1787 (N.D. Cal. Feb. 7, 2005) ........... 17-18, 19, 21, 22

*In re Financial Corp. of America Shareholder Litig.*,
    796 F.2d 1126 (9th Cir. 1986) ............................................................................................ 9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    308 F. Supp. 2d 249 (S.D.N.Y. 2004) .............................................................................. 21

*In re ICN Pharms., Inc. Sec. Litig.*,
    299 F. Supp. 2d 1055 (N.D. Cal. 2004) ........................................................................... 21

*In re Interbank Funding Corp. Sec. Litig.*,
    329 F. Supp. 2d 84 (D.D.C. 2004) ................................................................................... 13

*In re IBM Corp. Sec. Litig.*,
    163 F.3d 102 (2d Cir. 1998) ............................................................................................. 12

*In re Jenny Craig Sec. Litig.*,
    No. 92-0845,1992 U.S. Dist. LEXIS 22769 (S.D. Cal. Dec. 19, 1992) .............................. 16

*In re K-tel Int'l Sec. Litig.*,
    300 F.3d 881 (8th Cir. 2002) ............................................................................................ 18

*In re KeySpan Corp. Sec. Litig.*,
    No. 0-CV-5852, 2003 U.S. Dist. LEXIS 20746 (E.D.N.Y. Mar. 18, 2003) .................... 18-19

*In re MDC Holdings Sec. Litig.*,
    754 F. Supp. 785 (S.D. Cal. 1990) .............................................................................. 15, 16

*In re Network Associates, Inc. II Sec. Litig.*,
    No. C-00-4849, 2003 U.S. Dist. LEXIS 14442 (N.D. Cal. Mar. 25, 2003) ....................... 21

*In re Nortel Networks Corp. Sec. Litig.*,
   238 F. Supp. 2d 613 (S.D.N.Y. 2003) ................................................................................*passim*

*In re Read-Rite Corp. Sec. Litig.*,
   335 F. 3d 843 (9th Cir. 2003) ................................................................................ 3, 17

*In re Seagate Technology II Sec. Litig.*,
   No. C-89-2493, 1995 U.S. Dist. LEXIS 2052 (N.D. Cal. February 8, 1995) ........................ 12

*In re Silicon Graphics Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ................................................................................ 20

*In re Splash Technology Holdings, Inc. Sec. Litig.*,
   160 F. Supp. 2d 1059 (N.D. Cal. 2001) ................................................................................ 18

*In re Surebeam Corp. Sec. Litig.*,
   No. 03-CV-1721, 2004 U.S. Dist. LEXIS 26951 (S.D. Cal. Dec. 30, 2004) ........................ 15

*In re Vantive Corp. Sec. Litig.*,
   283 F.3d 1079 (9th Cir. 2002) ................................................................................ 20

*In re Turbodyne Technologies, Inc. Sec. Litig.*,
   No. CV-99-00697, 2002 U.S. Dist. LEXIS 25738 (C.D. Cal. Mar. 13, 2002) ........................ 14

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
   No. C-02-03383, 2004 U.S. Dist. LEXIS 24868 (N.D. Cal. July 27, 2004) ........................ 14

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994) ................................................................................ 21

*Konstantinakos v. Fed. Deposit Insurance Corp.*,
   719 F. Supp. 35 (D. Mass. 1989) ................................................................................ 13

*Levine v. Diamanthuset, Inc.*,
   950 F.2d 1478 (9th Cir. 1991) ................................................................................ 9

*Ontario Public Services Employees Union Pension Trust Fund v.
   Nortel Networks Corp.*,
   369 F.3d 27 (2d Cir. 2004) ................................................................................*passim*

*Press v. Chem. Inv. Servs. Corp.*,
   988 F. Supp. 375 (S.D.N.Y. 1997) ................................................................................ 11

*Pross v. Katz*,
   784 F.2d 455 (2d Cir. 1986) ................................................................................ 11

*Saxe v. E.F. Hutton & Co.*,
   789 F.2d 105 (2d Cir. 1986) ................................................................................ 10

*Roots Partnership v. Lands' End, Inc.*,
   965 F.2d 1411 (7th Cir. 1992) ................................................................................ 13

*Unger v. Amedisys, Inc.*,
   No. 03-30965, 2005 U.S. App. LEXIS 2778 (5th Cir. Feb. 17, 2005) ................................ 15

*VT Investors v. R & D Funding Corp.*,

733 F. Supp. 823 (D. N.J. 1990) ............................................................................... 11

*Walsh v. Chittenden Corp.*,
   798 F. Supp. 1043 (D. Vt. 1992) ......................................................................... 14

### STATUTES

15 U.S.C.
   § 78u-4(b) .......................................................................................................... 17, 18

17 C.F.R.
   § 240.10B-5 ........................................................................................................ *passim*

Federal Rules of Civil Procedure
   Rule 9(b) ............................................................................................................. *passim*

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that, on April 29, 2005, at 10:00 a.m., or as soon thereafter as

4 the matter may be heard, in the Courtroom of the Honorable Claudia Wilken, located at the

5 United States District Court, Oakland Division, Oakland Federal Building, 1301 Clay Street,

6 Oakland, California, defendants JDS Uniphase Corporation ("JDSU" or the "Company"), Jozef

7 Straus, Anthony R. Muller, and Charles J. Abbe (collectively the "JDSU Defendants") will and

8 hereby do move the Court pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil

9 Procedure to dismiss Plaintiff's Amended Complaint for Violation of the Securities Exchange Act

10 of 1934 ("AC" or the "Complaint").

11

This motion is based on this Notice of Motion and Motion, the Memorandum of Points

12 and Authorities set forth below, the Request for Judicial Notice ("RJN") and attached exhibits,

13 the reply brief to be filed, and such other written or oral argument as may be presented before this

14 Motion is taken under submission by the Court.

15

**ISSUES TO BE DECIDED**
**(Local Rule 7-4(a)(3))**

16

17 **Standing**

18

1. Does Plaintiff have standing to sue the JDSU Defendants under Section 10(b) of the

19 Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5, where the security she

20 purchased was not common stock issued by JDSU, but rather "GOAL" notes issued by UBS AG,

21 a Swiss bank?

22 **"In Connection With"**

23

2. Do Plaintiff's claims also fail because Defendants' allegedly misleading statements

24 were not made "in connection with" Plaintiff's purchase of securities, as (a) the statements were

25 made by JDSU in connection with JDSU's operations, not by UBS AG or with regard to the

26 GOAL notes, and (b) all Class Period statements occurred after Plaintiff's purchase?

27

28

**Reliance**

3.     Do Plaintiff's claims also fail because she does not allege with particularity either actual reliance or that the GOAL notes traded in an efficient market, as is required to support a presumption of reliance?

**Scienter**

4.     Do Plaintiff's claims also fail because the Individual Defendants' stock sales, the Company's acquisitions, the Pitre e-mail, and the other allegations that Plaintiff cites all relate to events occurring months before the start of the Class Period, and therefore do not raise a strong inference of scienter as to JDSU's statements during the Class Period?

1

**INTRODUCTION**

2      Plaintiff's Complaint largely copies the complaint filed on behalf of JDSU stockholders in

3   *In re JDS Uniphase Corporation Securities Litigation*, Master File No. C-02-1486 ("*In re*

4   *JDSU*"), but it raises fundamentally different issues.  First, unlike *In re JDSU*, this case does not

5   involve JDSU securities.  Instead, Plaintiff alleges that she purchased notes issued by UBS AG

6   ("UBS"), a Swiss bank.  Because Plaintiff did not trade in JDSU securities, she lacks standing to

7   challenge JDSU's statements.  *Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel*

8   *Networks Corp.*, 369 F.3d 27 (2d Cir. 2004) ("*Nortel Networks*").  In addition, JDSU's statements

9   about JDSU operations were not "in connection with" her purchase of securities issued by UBS.

10  *See In re Nortel Networks Corp. Sec. Litig.*, 238 F. Supp. 2d 613, 623 (S.D.N.Y. 2003).

11     Also unlike *In re JDSU*, Plaintiff fails to meet the requirements for pleading reliance.  She

12  claims that she is entitled to a presumption of reliance on the "fraud-on-the-market" theory, yet

13  she does not meet the requirements for pleading that the GOAL notes traded in an efficient

14  market.  On this ground, as well, the Complaint should be dismissed.

15     A further difference between this case and *In re JDSU* is that the class period alleged here

16  ("Class Period") is much shorter.  The Class Period asserted by Plaintiff runs from March 6, 2001

17  to July 26, 2001, encompassing only the last four-and-a-half months of the 21-month class period

18  in *In re JDSU*.  Despite the different Class Period, Plaintiff relies almost entirely on the same

19  allegations as in the *In re JDSU* action, even though those allegations concern events that

20  occurred months (and years) before the Class Period here.  Plaintiff therefore fails to plead the

21  necessary "strong inference" of scienter, as a complaint must allege "specific '*contemporaneous*

22  statements or conditions' that demonstrate the intentional or the deliberately reckless false or

23  misleading nature of the statements *when made*."  *In re Read-Rite Corp. Sec. Litig.*, 335 F. 3d

24  843, 846 (9th Cir. 2003) (emphasis added) (citations omitted).

25     The shorter Class Period in this Complaint is also fatal to Plaintiff's effort to allege that

26  JDSU's statements during the Class Period were "in connection with" her purchase of the UBS

27  notes.  Plaintiff challenges statements made in April and May 2001, more than a month after she

28  allegedly purchased her UBS notes.  Yet statements made after a plaintiff bought her securities

1    are not made "in connection with" that purchase.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497,

2    501 (9th Cir. 1992).

3        Plaintiff cannot cure these weaknesses on amendment.  Accordingly, the Complaint

4    should be dismissed with prejudice.

5                              **STATEMENT OF FACTS**

6        JDSU is a provider of fiber optic components and modules, (AC ¶ 19), and its stock price

7    reflected the boom and bust in the telecommunications market.  From Fall 1999 through the end

8    of 2000, the Company reported six consecutive quarters of sales growth.  JDSU's stock price

9    similarly increased, reaching as high as $153.42 on March 7, 2000.  (*See* RJN, Ex. A.)  By

10   January 25, 2001 – when JDSU announced results for the second quarter of fiscal year 2001 – the

11   growth in demand for the Company's products was beginning to slow, so the Company warned

12   investors that it was reducing its forecasts of future revenue growth.  (AC ¶ 139.)  On February

13   13, 2001, JDSU announced that it was again reducing its sales projections.  (AC ¶ 146.)  On

14   March 6, 2001, JDSU lowered its forecasts again.  (AC ¶ 151.)  By the time of the March 2001

15   revised forecast, the price of JDSU's stock had fallen to approximately $28.00.  (AC ¶ 153.)

16       Several days later, on or about March 8, 2001, UBS first issued the securities Plaintiff

17   Shirley Zelman purchased.  (RJN, Ex. B at 3; AC ¶ 34.)  UBS registered the notes, called

18   GOALs, with the Securities and Exchange Commission pursuant to Section 12(b) of the

19   Exchange Act (RJN, Ex. C at 1) and issued a Prospectus and Prospectus Supplement in

20   connection with the offering.  (AC ¶ 36.)  The notes had a maturity date of September 12, 2002.

21   (AC ¶ 32.)

22       The UBS GOAL securities have several distinguishing features.  UBS paid GOAL note

23   holders 26 percent per annum interest.  (AC ¶ 32.)  At maturity, UBS was to pay the GOAL note

24   holder either the principal amount of the note, or a fixed number of JDSU shares if those shares

25   traded below $28.125 on September 9, 2002.  (AC ¶ 33.)  As a result, although a drop in the price

26   of JDSU stock could adversely affect the value of a GOAL note, GOALs investors could not

27   participate in any appreciation in JDSU stock.  Indeed, it was "possible for the price of the

28   common stock of JDS Uniphase Corporation to increase while the market price of the GOALs

1   decline[d]." (RJN, Ex. B at S-6.)  GOALs investors had no voting rights in JDSU stock, and no

2   right to receive dividends from JDSU. (*Id*. at S-7.)  Their investment was not nearly as liquid as

3   JDSU stock. "You should be willing to hold your GOALs until the maturity date," warned

4   UBS's Prospectus Supplement, as "[t]here may be little or no secondary market for the GOALs."

5   (*Id*. at S-5.)  Finally, JDSU had no involvement in offering the GOAL notes, and received no

6   proceeds from their sale. (*Id*. at S-6.)

7          Plaintiff alleges that her GOAL notes lost value as JDSU's stock price declined, but

8   produces little support.  She alleges isolated data points of questionable relevance, comparing, for

9   example, the one-day drop in JDSU's stock price from April 23 to April 24, 2001 (a 14 percent

10  fall) with the three-day decline in the value of GOAL securities from April 23 to April 26, 2001

11  (an 8.5 percent slide). (AC ¶ 157.)  And her own statistics indicate that, compared to the rather

12  steep decline in JDSU's stock price in the spring of 2001, the value of GOAL notes fell less.  For

13  example, by June 15, 2001, the price of JDSU stock had fallen to $12.44 per share, 44 percent of

14  its value on March 8, while GOAL notes traded at a more robust 79 percent of their face value.

15  (*Id*. ¶ 163; *see also* ¶ 167 (by July 27, 2001, JDSU stock sold at $8.55 per share, 30 percent of its

16  March 8, 2001 value, while GOAL notes traded at 58.25 percent of their face value).)  At most,

17  Plaintiff's allegations suggest an uneven correlation between the price of the GOAL notes and

18  JDSU stock.  That the connection between the two securities was no stronger should have come

19  as no surprise, however, as UBS had warned its investors in capital letters that "IF THE

20  MARKET PRICE OF JDS UNIPHASE CORPORATION COMMON STOCK CHANGES, THE

21  MARKET VALUE OF YOUR GOALs MAY NOT CHANGE IN THE SAME MANNER," and

22  the Prospectus Supplement devoted a paragraph to developing this theme. (RJN, Ex. B at S-6.)

23          Approximately eight months after JDSU's July 2001 announcement, numerous lawsuits

24  were filed in state and federal courts against JDSU, including *In re JDSU* and Zelman's case.

25  Plaintiff filed her original complaint with a "Certificate of Named Plaintiff Pursuant to Federal

26  Securities Laws," signed under penalty of perjury.  In it, Plaintiff states that she purchased

27  GOALs notes on March 6, 2001, which is two days before her own Complaint acknowledges the

28  securities were first offered to the public. (AC ¶ 31; *see also* RJN, Ex. B at 1 (stating that the

1  trade date for the notes was March 8, 2001).)  On February 4, 2005, Plaintiff filed an Amended

2  Complaint which repeats, sometimes verbatim, almost all of the allegations made by the *In re*

3  *JDSU* plaintiffs, in spite of the fact that most of the events alleged in that complaint occurred

4  months (or even years) before Plaintiff's alleged Class Period.

5  **ARGUMENT**

6       To state a claim under Rule 10b-5, a plaintiff must establish that she has standing to sue

7  under that provision.  *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 755 (1975).  In

8  addition, a plaintiff must allege: (1) a misrepresentation or omission of material fact; (2) in

9  connection with the purchase or sale of a security; (3) with scienter; (4) on which plaintiff relied;

10  and (5) that proximately caused the alleged loss.  *Broudo v. Dura Pharms., Inc.*, 339 F.3d 933,

11  937 (9th Cir. 2003).

12  **I.    PLAINTIFF LACKS STANDING TO BRING THIS ACTION BECAUSE SHE DID**
13             **NOT PURCHASE JDSU SECURITIES.**

14       Plaintiff's action is based on her alleged purchase of securities issued by UBS, an

15  investment bank that has no affiliation with JDSU.  Plaintiff does not claim to have purchased

16  JDSU stock at any time, nor does she claim that JDSU ever made false or misleading statements

17  about UBS or her UBS notes.  Yet she seeks damages against the JDSU Defendants on the theory

18  that the price of her UBS securities was inflated by JDSU's statements about JDSU's operations.

19  Plaintiff's novel theory is foreclosed by the Second Circuit's decision in *Nortel Networks*, and by

20  the Supreme Court's opinion in *Blue Chip Stamps*.

21       In *Nortel Networks*, the Second Circuit rejected a Rule 10b-5 claim on facts similar to

22  those alleged here.  Plaintiffs, ironically purporting to represent a class of JDSU shareholders,[1]

23  alleged that misrepresentations by Nortel concerning its own financial operations artificially

24  inflated not only the price of Nortel stock, but the price of JDSU stock as well, due to the

25  "business relationship" between the two companies.  *Nortel Networks*, 369 F.3d at 32.  Nortel had

26
27       [1] It is a coincidence that a purported class of JDSU shareholders (but not the Company) were the unsuccessful plaintiffs in a securities action that raises virtually the same issues raised here.

28

been one of JDSU's largest customers, and JDSU's stock declined when Nortel's business fell

off.  *Id*. at 28.  The District Court found that the JDSU shareholders lacked standing under

Section 10(b), observing that "plaintiffs' case is foreclosed by the Supreme Court decision of

*Blue Chip Stamps*."  *Nortel Networks*, 238 F. Supp. at 622.  On appeal, the Second Circuit

affirmed on the same ground.  It answered in the negative the same question posed by this case:

"[W]hether an individual has standing to sue a company pursuant to Section 10(b) of the

Securities Exchange Act of 1934 and Rule 10b-5, for making a material misstatement when the

individual purchased the security of a company other than the one that made the misstatement."

*Nortel Networks*, 369 F.3d at 28, 34.

Here, it is indisputable that Plaintiff "purchased the security of a company other than the

one that made the misstatement":

- UBS, not JDSU, issued the GOAL notes;

- UBS, not JDSU, registered the GOAL notes with the Securities and Exchange
  Commission pursuant to Section 12(b) of the Exchange Act;

- UBS, not JDSU, prepared and signed the Prospectus and Prospectus Supplement
  issued in connection with the offering of the GOAL notes;

- Plaintiff does not claim that JDSU had any affiliation with UBS or played any
  role in the offering of the GOAL notes; indeed, the GOALs Prospectus expressly
  states that "JDS Uniphase Corporation is not involved in the offer of the GOALs
  in any way" (RJN, Ex. B at S-7); and

- Plaintiff does not challenge, or even mention, statements that relate to UBS's
  operations or the GOAL notes, but challenges only JDSU's statements about
  JDSU's operations.

Plaintiff, therefore, did not purchase or sell securities "to which the [allegedly misleading]

prospectus[es], representation[s], or omission[s] relate[]," but instead purchased the securities of a

different company that had no affiliation with JDSU.  *Nortel Networks*, 369 F.3d at 32 (citation

omitted).  As in *Nortel Networks*, Plaintiff lacks standing to sue.

1   *Nortel Networks* is but one application of the Supreme Court's holding that the class of

2   plaintiffs under Rule 10b-5 is limited "to those who have at least dealt in the security to which the

3   prospectus, representation, or omission relates." 369 F.3d at 32 (citing *Blue Chip Stamps*, 421

4   U.S. at 747). In *Blue Chip Stamps*, the Court rejected the argument, implicit in the Complaint

5   here, that any party purportedly damaged by a false statement may bring an action for damages

6   under Rule 10b-5. 421 U.S. at 740. As in this case, the plaintiff in *Blue Chip Stamps* had not

7   purchased securities from the defendant company, but alleged that he had suffered damages as a

8   result of the company's misleading statements about its own securities. The Court refused to

9   expand the class of plaintiffs who may sue under Rule 10b-5 to include such claims. *Id.* at 747.

10  The ruling in *Blue Chips Stamps* embraced a limiting principle for liability under Rule

11  10b-5 that had been first articulated in *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.

12  1952), and had been reaffirmed by "virtually all lower federal courts facing this issue." *Blue*

13  *Chip Stamps*, 421 U.S. at 731. The Court noted that the right to bring a private action pursuant to

14  Rule 10b-5 was "a judicial oak which has grown from little more than a legislative acorn," and

15  that it was therefore proper for the courts to limit that right when policy considerations weighed

16  in favor of such limits. *Id.* at 737.

17  One consideration at the heart of *Nortel Networks* and *Blue Chip Stamps* is "potentially

18  abusive litigation." *Nortel Networks*, 369 F. 3d at 33. In particular, both opinions expressed

19  concern that, without the limitation on standing adopted by those courts, a "'plaintiff's entire

20  testimony could be dependent upon uncorroborated oral evidence of many of the crucial elements

21  of his claims and still be sufficient to go to the jury.'" *Id.* (citing *Blue Chip Stamps*, 421 U.S. at

22  746). That concern applies in full force here. Plaintiff claims that the JDSU Defendants' false

23  statements caused her to purchase securities, but she alleges no objective facts to corroborate this

24  claim.

25  If anything, Plaintiff's purchase of GOAL notes confirms her decision *not* to purchase

26  JDSU common stock. As the Prospectus Supplement explicitly stated, "[i]nvesting in the GOALs

27  is NOT equivalent to investing directly in JDS Uniphase Corporation common stock." (RJN, Ex.

28  B at S-5.) It was "possible for the price of the common stock of JDS Uniphase Corporation to

increase while the market price of the GOALs declines." (*Id*. at S-6.)  UBS further advised

investors that "[t]he value of the GOALs will be affected by a number of interrelated factors,"

many of which were completely independent of JDSU's stock price.  (*Id*. at S-14.)  Indeed, UBS

emphasized that "JDS Uniphase Corporation is not involved in the offer of the GOALs in any

way and has no obligation to consider your interest as an owner of GOALs in taking any

corporate actions that might affect the value of your GOALs."  (*Id*. at S-7.)   Given these

fundamental differences between the GOAL notes and JDSU common stock, Plaintiff's purchase

of GOAL notes does not demonstrate any reliance on statements by JDSU.  Plaintiff's claims

therefore raise the same risk of potentially abusive litigation that the *Nortel Networks* court

sought to avoid.  *See* 369 F.3d at 33.

   *Nortel Networks* is squarely in line with a larger body of case law implementing *Blue

Chips Stamps*' "restrictive view of standing under Rule 10b-5."  *Nortel Networks*, 369 F.3d at 31.

That case law demonstrates a judicial wariness of claims such as Plaintiff's that would result in

"the inexorable broadening of the class of plaintiff who may sue in this area of the law."  421

U.S. at 747-48.  *See*, *e.g.*, *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997 (9th Cir. 2002)

(plaintiff lacks standing for a Section 10(b) claim if she did not trade contemporaneously with

insider trading defendants)  *Id.*  Plaintiff's standing theory cannot be reconciled with the principle

articulated in these authorities, that a private right of action must be narrowly applied.  Because

she lacks standing, her Complaint should be dismissed.

## II.    PLAINTIFF FAILS TO ALLEGE THAT DEFENDANTS' STATEMENTS WERE "IN CONNECTION WITH" HER PURCHASE.

   To plead a cause of action under Rule 10b-5, Plaintiff must set forth facts showing that the

alleged fraud was "in connection with" a securities transaction.  *In re Financial Corp. of America

S'holder Litig.*, 796 F.2d 1126, 1129-30 (9th Cir. 1986) (citing 17 C.F.R. § 240.10B-5).  To

satisfy this statutory requirement, "a plaintiff must establish a connection between the defendant's

alleged misrepresentation and the security at issue."  *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478,

1486 (9th Cir. 1991).  For two independent reasons, Plaintiff fails this requirement.

1

A.      JDSU's Statements About Its Operations Were Not "In Connection With"
Plaintiff's Purchase of GOAL Notes Issued by UBS.

2

3        Plaintiff challenges statements that JDSU made about JDSU's operations.  Just as those

4   statements do not establish standing for a plaintiff who purchased a UBS note rather than JDSU

5   common stock, so, too, do they fail to satisfy the "in connection with" requirement of Rule 10b-

6   5.[2]  Nor is the "in connection with" requirement met, regardless of who issued the securities in

7   question, where, as here, the challenged statements are only tangentially related to plaintiff's

8   securities transaction.

9        In various factual contexts, courts have held that statements bearing on one company's

10  securities are not "in connection with" an investor's transaction in another company's securities.

11  For example, in *Nortel Networks*, the District Court held that the requisite "connection does not

12  exist" where the alleged misstatements concerned only Nortel's operations, and the JDSU

13  shareholder plaintiffs did not claim to have purchased or sold Nortel stock.  238 F. Supp. 2d at

14  623.  The court noted that plaintiffs had failed to identify any cases permitting "a shareholder of

15  one company to bring a private Section 10(b) or Rule 10b-5 claim against a second company

16  based on alleged misstatements pertaining to the second company's stock."  *Id.*

17       Similarly, in *Saxe v. E.F. Hutton & Co., Inc*., 789 F.2d 105 (2d Cir. 1986), the court

18  rejected a Rule 10b-5 claim against E.F. Hutton, whose alleged misrepresentations caused an

19  investor to liquidate his E.F. Hutton portfolio and invest instead in risky commodities futures with

20  another firm.  E.F. Hutton's statements were not about the E.F. Hutton portfolio, however.  They

21  concerned the commodities advisor and the investments he offered.  For this reason, the court

22  found that the statements were not "in connection with" plaintiff's sale of the stock in his E.F.

23  Hutton account.  *Id*. at 108.

24

25

26       [2] This "in connection with" requirement is independent of the standing requirement
discussed in Section I, *supra*, although similar to it.  *See Nortel Networks*, 369 F.3d at 34 (noting
27  that the "basic requirements of standing" under Rule 10b-5 and the "in connection with"
requirement are "two distinct inquiries").

28

1    The court in *Gershon v. Wal-Mart Stores*, 901 F. Supp. 128 (S.D.N.Y. 1995), reached a

2    similar result after evaluating claims brought against Wal-Mart by shareholders of another

3    company, Gitano, challenging Wal-Mart's alleged concealment of material information pertaining

4    to the relationship between the two companies.  The court dismissed the complaint with

5    prejudice, rejecting the Gitano shareholders' argument that their stock purchases were "in

6    connection with" Wal-Mart's alleged misconduct by virtue of Gitano's "close and longstanding

7    business relationship" with Wal-Mart.  *Id*. at 130 (citation omitted).  Significantly, the court noted

8    that "[t]he reach of Rule 10b-5 is not so extensive as to grasp all actors whose behavior has a

9    negative impact on the market price of an issuer's securities."  *Id*. at 132.

10   Here, as in *Nortel Networks*, *Saxe*, and *Gershon*, Plaintiff cannot satisfy the "in connection

11   with" requirement because she does not allege that she purchased JDSU securities or that JDSU

12   made statements about the UBS securities she did purchase.

13   Even where the challenged statements were made by a company that has some

14   relationship to the securities at issue, the "in connection with" test will not be satisfied where, as

15   here, plaintiff's purchase is "transactionally remote" from and "tangentially related to" those

16   statements.  *VT Investors v. R & D Funding Corp*., 733 F. Supp. 823, 832 (D.N.J. 1990).  In

17   particular, the "in connection with" requirement is not satisfied by a plaintiff's assertion of "but-

18   for" causation.  *See Chem. Bank v. Arthur Andersen & Co*., 726 F.2d 930, 943 (2d Cir. 1984); *see

19   also Pross v. Katz*, 784 F.2d  455, 459 (2d Cir. 1986) ("the fraud [alleged must be] 'integral to the

20   purchase and sale of the securities in question'"); *Press v. Chem. Inv. Servs. Corp*., 988 F. Supp.

21   375, 389 (S.D.N.Y. 1997) ("misrepresentations or omissions . . . not pertaining to the securities

22   themselves cannot form the basis of a violation of Section 10(b) or Rule 10b-5") (citations

23   omitted).

24   Plaintiff's purchase of UBS notes was "transactionally remote" from the challenged

25   statements because the statements pertained exclusively to JDSU's operations.  As noted above,

26   the value of the notes Plaintiff purchased at any given time depended on numerous factors

27   unrelated to JDSU operations, including the time remaining to maturity on the notes, the level of

28   interest rates, and other economic conditions, as well as UBS's perceived creditworthiness.  (*See*

1  RJN, Ex. B at S-14.)  Thus, it was "possible for the price of the common stock of JDS Uniphase

2  Corporation to increase while the market price of the GOALs declines." (*Id*. at S-6).  Indeed, the

3  Prospectus expressly cautioned that "while the price of the [JDSU] stock is an important variable,

4  it cannot be used as the sole measure to approximate value of this investment." (*Id*. at S-14.)

5       The nexus between the statements Plaintiff challenges and the securities she purchased is

6  so weak that to permit Plaintiff to proceed with her claim would break new ground, exposing

7  companies to "liability in an indeterminate amount for an indeterminate time to an indeterminate

8  class."  *Blue Chip Stamps*, 421 U.S. at 748 (citation omitted).  A company's potential liability

9  would depend not on how many shares it has outstanding, but on the creativity of investment

10  bankers and others in coming up with their own financial instruments.  Subjecting companies to

11  liability on this scale, in a field already characterized by "a danger of vexatiousness different in

12  degree and in kind from that which accompanies litigation in general," would encourage the

13  abusive practices that the *Blue Chips Stamps* court sought to curb.  *Id*. at 739.

14       **B.**    **JDSU's Statements in April and May 2001 Were Not "In Connection With"**
                   **Plaintiff's Purchase in March 2001.**

15

16       Plaintiff challenges only two statements made during *her* purported Class Period: one on

17  April 24, 2001 and one on May 10, 2001.  JDSU did not make these statements until more than

18  six weeks *after* Plaintiff claims to have purchased her GOAL notes.  Thus they could not have

19  been "in connection" with Plaintiff's purchase.

20       Although Plaintiff purports to challenge a long series of JDSU statements (*see*, *e.g.*, AC

21  ¶¶ 87, 94, and 99), only the statements during the Class Period can serve as grounds for Plaintiff's

22  claims.  Liability under Section 10(b) and Rule 10b-5 "cannot attach to statements made either

23  before or after the class period."  *In re Seagate Tech. II, Sec. Litig*., No. C-89-2493, 1995 U.S.

24  Dist. LEXIS 2052, at *10 (N.D. Cal. Feb. 8, 1995); *see also In re Clearly Canadian Sec. Litig*.,

25  875 F. Supp. 1410, 1420 (N.D. Cal. 1995) (striking pre-class period statements from complaint);

26  *In re IBM Corp. Sec. Litig*., 163 F.3d 102, 107 (2d Cir. 1998) (holding that "[a] defendant is liable

27  only for those statements made during the class period").  Plaintiff's claims therefore rest on just

28  two allegedly false or misleading statements: (1) JDSU's April 24, 2001 press release, in which

the Company announced its financial results for the third quarter of fiscal year 2001; and (2) JDSU's May 10, 2001 Form 10-Q for quarter ending March 31, 2001.[3]

Yet neither of these two statements can satisfy the "in connection with" requirement of Rule 10b-5. "As a matter of law, 'conduct actionable under Rule 10b-5 must occur *before* investors purchase the securities.'" *Binder v. Gillespie*, 184 F.3d 1059, 1066 (9th Cir. 1999) (citations omitted). These statements occurred after Plaintiff's purchase.

The Ninth Circuit applied this principle in *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992). In *Hanon*, the court granted summary judgment for a defendant who made allegedly misleading statements on May 4, 1989 regarding his company's ink jet technology. The court held that "[w]e need not determine whether this statement is misleading because it was issued after [plaintiff] bought his stock and thus could not have affected his stock's April 14, 1989 market price or his decision to buy on that date." *Id.* at 501; *see also Roots P'ship v. Lands' End, Inc.*, 965 F.2d 1411, 1420 (7th Cir. 1992) ("post-purchase statements cannot form the basis of Rule 10b-5 liability, because the statements could not have affected the price at which plaintiff actually purchased"); *Konstantinakos v. Fed. Deposit Ins. Corp.*, 719 F. Supp. 35, 38 (D. Mass. 1989) ("[t]here is no way that the [challenged] 1988 statements can be said to have been made 'in connection with the purchase or sale of [a] security' in 1987") (citations omitted). That other members of the class may have purchased the UBS notes after March 6, 2001 is irrelevant. Plaintiff "cannot establish standing to sue on the hypothesized purchases of members of his uncertified class." *In re Interbank Funding Corp. Sec. Litig.*, 329 F. Supp. 2d 84, 95-96 (D.D.C. 2004); *see also Roots P'ship*, 965 F.2d at 1420. Because Plaintiff's own purchase of GOALs notes is alleged to have occurred more than six weeks before the first challenged statement during the Class Period, her claim fails as a matter of law.

---

[3] Plaintiff cites, but does not challenge as false or misleading, JDSU's press releases on June 12 and 14, 2001.

1
2

III.   **PLAINTIFF FAILS TO ALLEGE PARTICULARIZED FACTS SHOWING THAT SHE ACTUALLY RELIED ON JDSU'S STATEMENTS OR THAT SHE IS ENTITLED TO A PRESUMPTION OF RELIANCE.**

3        Reliance is an essential element of a Section 10(b) claim and, accordingly, must be

4   alleged with particularity pursuant to Rule 9(b).  *See, e.g., In re Van Wagoner Funds, Inc. Sec.*

5   *Litig.*, No. C-02-03383, 2004 U.S. Dist. LEXIS 24868, at **33-35 (N.D. Cal. July 27, 2004); *In*

6   *re Turbodyne Techs, Inc. Sec. Litig.*, No. CV-99-00697, 2002 U.S. Dist. LEXIS 25738, at *47

7   (C.D. Cal. Mar. 13, 2002).  In a typical securities class action, plaintiffs are entitled to a

8   presumption of reliance based on the "fraud on the market theory," as they can allege specific

9   facts showing that the securities at issue traded in an efficient market.  *See Basic Inc. v. Levinson*,

10   485 U.S. 224, 241-42 (1988); *Binder*, 184 F.3d at 1064.  For example, the complaint in *Walsh v.*

11   *Chittenden Corp.*, 798 F. Supp. 1043 (D. Ver. 1992), alleged that the securities in that case traded

12   on NASDAQ, that the trading volume of these securities was over two million shares during the

13   purported class period, and that the issuer of the securities filed periodic public reports.  *Id.* at

14   1051.  Alternatively, plaintiffs who do not allege specific facts establishing the existence of an

15   efficient market for their securities must plead particularized facts showing actual reliance on the

16   challenged statements.  *See, e.g., Turbodyne Techs.*, 2002 U.S. Dist. LEXIS 25738, at **48-49.

17   Here, Plaintiff fails to plead facts showing either an efficient market for GOAL notes or actual

18   reliance.

19        The only allegation made by Plaintiff concerning actual reliance by her on JDSU's

20   statements is both ambiguous and conclusory: "in reliance on the misrepresentations concerning

21   JDS and/or the integrity of the markets for JDS stock and/or the GOALs, [Plaintiff] paid

22   artificially inflated prices for GOALs."  (AC ¶ 229.)  Such "general allegations of reliance [are]

23   insufficient," however.  *Van Wagoner Funds*, 2004 U.S. Dist. LEXIS 24868, at *33 (dismissing

24   10b-5 claim where plaintiffs did not specifically allege that they read the disputed statements);

25   *see also Alter v. DBLKM, Inc.*, 840 F. Supp. 799, 804-805 (D. Colo. 1993) (rejecting plaintiffs'

26   "conclusory parroting of the [reliance] legal requirement").  Thus, Plaintiff's actual reliance

27   allegation fails.

28

1   Plaintiff's efficient market allegations are also insufficient.  Courts in the Ninth Circuit

2   apply a five-factor test in analyzing market efficiency:

3   • whether the security trades at a high weekly volume;

4   • whether securities analysts follow and report on the security;

5   • whether the security has market makers and arbitrageurs;

6   • whether the company is eligible to file SEC registration form S-3, as opposed to

7   form S-1 or S-2; and

8   • whether "empirical facts show[] a cause and effect relationship between

9   unexpected corporate events or financial releases" and the price of the security.

10  *See Binder*, 184 F.3d at 1065 (quoting *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J.

11  1989).)   Plaintiff alleges no facts regarding the first four of these factors and barely any facts

12  regarding the fifth factor.  Her claim should be dismissed for this reason alone.  *See In re MDC*

13  *Holdings Sec. Litig.,* 754 F. Supp. 785, 805 (S.D. Cal. 1990) (refusing to apply "fraud on the

14  market" theory where plaintiffs alleged facts relating to the fifth *Cammer* factor, but alleged no

15  facts regarding the other factors); *Arena Land & Inv. Co. v. Petty*, 906 F. Supp. 1470, 1481 (D.

16  Utah 1994) (holding that "dismissal for failure to state a claim is appropriate where there are

17  inadequate factual allegations to show an efficient, developed market").[4]

18  Indeed, Plaintiff does not allege even in conclusory fashion that the GOAL securities were

19  actively traded in an efficient market.  Instead, Plaintiff alleges that *JDSU stock* traded in high

20  volumes, that *JDSU* was widely followed by analysts, that *JDSU* regularly issued press releases,

21  and that the market for *JDSU* securities "promptly digested current information with respect to

22  JDS from all publicly-available sources."  (AC ¶ 214.)   These allegations miss the point – the

23

24  _____

25  [4] *See also Unger v. Amedisys, Inc.*, No. 03-30965, 2005 U.S. App. LEXIS 2778, at **16-
    20 (5th Cir. Feb. 17, 2005) (plaintiffs failed to establish an efficient market where no analysts
    covered the securities in question and plaintiffs had provided no information as to the trading
26  volume of those securities); *In re Surebeam Corp. Sec. Litig.*, No. 03-CV-1721, 2004 U.S. Dist.
    LEXIS 26951, at *69 (S.D. Cal. Dec. 30, 2004) (dismissing complaint where plaintiffs failed to
27  address the *Cammer* factors).

28

1   question here is not whether JDSU common stock traded in an efficient market, but whether

2   Plaintiff's UBS-issued GOAL notes traded in an efficient market.

3         The plaintiffs in *MDC Holdings* made a similar error.  754 F. Supp. at 805.  Rather than

4   pointing to facts showing that their subordinated notes traded in an efficient market, those

5   plaintiffs alleged that "MDC securities" – referring to both MDC common stock and the

6   subordinated notes – responded to disclosures of adverse information by MDC.  The court

7   rejected this "conclusory, generic" argument, finding that MDC's "common stock is in a different

8   position" than the subordinated notes.  *Id.; see also Greenberg v. Boettcher & Co.*, 755 F. Supp.

9   776, 782 (N.D. Ill. 1991) (dismissing complaint where plaintiff failed to plead facts showing that

10  "there was an efficient market for the particular [securities Plaintiff] purchased").  Here,

11  Plaintiff's efficient market allegations are even more off the mark, as Plaintiff seeks to bootstrap

12  an efficient market claim for one security to facts concerning an entirely different security issued

13  by an entirely different company.  *See Binder*, 184 F.3d at 1065 (purpose of *Cammer* test is to

14  determine "efficiency in a *particular* market") (emphasis added).[5]

15        To the extent that Plaintiff alleges that she purchased her GOAL notes in the initial

16  offering of those securities, her claims fail for another reason: as a matter of law, the market for

17  an initial offering of securities is not efficient.  *See MDC Holdings*, 754 F. Supp. 806; *In re Jenny*

18  *Craig Sec. Litig.*, No. 92-0845, 1992 U.S. Dist. LEXIS 22769, at *16 (S.D. Cal. Dec. 19, 1992);

19  *Freeman v. Laventhol & Horwath*, 915 F.2d 193, 198-99 (6th Cir. 1990).  As the court in *MDC*

20  *Holdings* observed, "[t]he price of new securities is set by the issuers, *i.e.*, the corporation, the

21  underwriters, and the bankers, not the market."  754 F. Supp. at 806.  Accordingly, "[b]y

22  definition, an initial public offering of a new security does not involve an efficient, well-

23  developed market because there is no market."  *Id*.  Plaintiff's efficient market allegations

24

25      [5] The GOALs Prospectus Supplement cautioned investors that "[t]here may be little or no
   secondary market for the GOALs.  Although the GOALs have been approved for listing on the

26  American Stock Exchange, it is not possible to predict whether a secondary market will develop
   for the GOALs.  Even if a secondary market for the GOALs develops, it may not provide

27  significant liquidity."  (RJN, Ex. B at S-5.)

28

1  therefore fail, whether she purchased in the primary or the secondary market, and her Rule 10b-5

2  claim likewise fails.

3  **IV.   PLAINTIFF FAILS TO ALLEGE WITH PARTICULARITY FACTS RAISING A STRONG INFERENCE OF SCIENTER, SINCE THE FACTS SHE ALLEGES CONCERN EVENTS WELL BEFORE THE CLASS PERIOD.**

4

5  Nearly all of the substantive allegations in the Complaint are paraphrased or copied from

6  allegations made in the related securities action, *In re JDSU*.  By borrowing so heavily, Plaintiff

7  may have hoped to benefit from the Court's recent order denying defendants' motion to dismiss

8  that complaint.[6]  Plaintiff here, however, asserts a Class Period that encompasses only the last

9  four-and-a-half months (from March 6, 2001 to July 26, 2001) of the much longer class period in

10  *In re JDSU*.  The Court's order sustaining the complaint in *In re JDSU* relied on a number of

11  allegations collectively – the stock sales during August 2000, an e-mail dated August 18, 2000,

12  the Redbook reports of 2000, and a news article purporting to describe Kevin Kalkhoven's state

13  of mind in Spring of 2000, (Order at 4, 6, 17-20)[7] – but none of these items address Defendants'

14  state of mind during the Class Period in this action.

15  **A.   Plaintiff Must Plead Specific Facts Contemporaneous to JDSU's April and May 2001 Statements Raising a Strong Inference of Scienter.**

16

17  Under the Reform Act, Plaintiff must "state with particularity facts giving rise to a strong

18  inference that the defendant[s] acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).

19  To satisfy this requirement, "the complaint must contain allegations of specific '*contemporaneous*

20  statements or conditions' that demonstrate the intentional or the deliberately reckless false or

21  misleading nature of the statements when made."  *In re Read-Rite Corp. Sec. Litig*., 335 F.3d 843,

22  846 (9th Cir. 2003) (emphasis added) (citation omitted); *see also In re CornerStone Propane*

23  *Partners, L.P. Sec. Litig*., No. C-03-2522, 2005 U.S. Dist. LEXIS 1787, at **67-68 (N.D. Cal.

24  _____

[6] Facing similar pleading tactics, the court in *Geinko v. Padda*, No. 00-C-5070, 2002 U.S. Dist. LEXIS 3316 (N.D. Ill. Feb. 26, 2002), found that the plaintiff's recitation of facts alleged in other actions and reliance on "the analysis of attorneys *in different actions* and who are presumably from different law firms" was improper.  The court accordingly dismissed the complaint, refusing to consider plaintiff's "hearsay allegations."  *Id*. at **20-22.

25

26

27  [7] Plaintiff does not allege that this article shows scienter here.

28

17

1  Feb. 7, 2005) (plaintiffs must "allege *contemporaneous* facts in sufficient detail and in a manner

2  that would create a strong inference that the alleged adverse facts were known *at the time of the*

3  *challenged statements*") (emphasis added) (citations omitted).

4          In addition, the Reform Act requires that Plaintiff plead these contemporaneous facts with

5  regard to *each* allegedly false statement during the Class Period.  *See* 15 U.S.C. § 78u-4(b)(1)(B);

6  *Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co*., 353 F.3d 1125,

7  1134 (9th Cir. 2004); *In re Splash Tech. Holdings Inc. Sec. Litig*., 160 F. Supp. 2d 1059, 1079

8  (N.D. Cal. 2001) ("in order to meet the scienter pleading requirements, [plaintiffs] would have to

9  specify the sources of defendants' alleged internal knowledge with respect to each allegedly

10  actionable statement") (quotations and citations omitted).  As noted in Part II.B. above, there are

11  two allegedly false statements during the Class Period: an April 24, 2001 press release and a May

12  10, 2001 Form 10-Q.  Plaintiff fails to plead facts raising a strong inference that either of these

13  statements was made with the requisite scienter.

14          **B.     Stock Sales That Occurred Before September 2000 Do Not Show Scienter.**

15          Plaintiff alleges that Defendants' stock sales demonstrate motive to commit fraud (AC

16  ¶ 227), but admits (indeed, emphasizes) that the bulk of these stock sales were made between

17  July 31 and August 31, 2000.  This is eight months before April 24, 2001, the first challenged

18  statement in the Class Period.  (*Id*. ¶¶ 190, 192.)  Indeed, the last sale of any JDSU stock

19  mentioned in the Complaint occurred on March 6, 2001, more than six weeks before this first

20  statement.  Thus, these stock sales "are inconsistent with plaintiff's theory that defendants

21  attempted to drive up the price of [JDSU] stock *during* the class period" and negate, rather than

22  support, any inference of scienter as to the challenged April 24 and May 10, 2001 statements.

23  *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989); *see also In re K-tel Int'l*

24  *Inc., Sec. Litig*., 300 F.3d 881, 896 (8th Cir. 2002) (plaintiff's argument was "undercut" by fact

25  that defendant did not sell stock during the class period); *Hockey v. Medhekar*, 30 F. Supp. 2d

26  1209, 1223 (N.D. Cal. 1998) ("[o]bviously, these sales [prior to the allegedly false statements]

27  cannot serve as motivation for later statements and thus did not occur at suspicious times"); *In re*

28  *KeySpan Corp. Sec. Litig*., No. 01-CV-5852, 2003 U.S. Dist. LEXIS 20746, at *75 (E.D.N.Y.

1  Mar. 18, 2003) (stock sales that predated the allegedly false statements "provide no suggestion of

2  improper motives regarding those statements").

3    **C.**  **Pitre's E-mail of August 18, 2000 Does Not Show Scienter.**

4    Again relying exclusively on allegations lifted from the *In re JDSU* complaint, Plaintiff

5  points to an August 18, 2000 e-mail from Thomas G. Pitre which, in Plaintiff's view, establishes

6  that Defendants "knew about the reduced demand" at that time.  (AC ¶ 180.)  Whatever the Pitre

7  e-mail's probative value in establishing Defendants' scienter for statements made in or around

8  August 2000, it is not a "contemporaneous fact [ ] that would create a strong inference" regarding

9  Defendants' knowledge of JDSU's financial prospects more than eight months later, on April 24

10  or May 10, 2001. *CornerStone Propane Partners*, 2005 U.S. Dist. LEXIS at **67-68; *see also In*

11  *re Apple Computer, Inc. Sec. Litig.*, 243 F. Supp. 2d 1012, 1017 n.2 (N.D. Cal. 2002)

12  (questioning relevance of alleged events that occurred before the class period).  The alleged Pitre

13  e-mail thus fails to help Plaintiff meet her heightened pleading burden.

14    **D.**  **Redbook Forecasts in 2000 and Unspecified Oracle Reports Do Not Show**

15      **Scienter.**

16    Plaintiff alleges that "[t]he Redbook forecasts referred to in the Pitre e-mail were provided

17  to senior executives, including Defendant Straus," and further alleges that "employees in charge

18  of the Redbook met weekly on Thursdays during 2000 to discuss current demand levels and any

19  changes thereto."  (AC ¶¶ 177, 180.)   These allegations fail to raise an inference, let alone a

20  strong inference, that Defendants knowingly made misleading statements regarding customer

21  demand during the Class Period.

22    First, Plaintiff fails to allege any facts suggesting that "Redbook forecasts" were

23  distributed to Defendants during the Class Period, or indeed at any time after 2000.  The court in

24  *Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999), dismissed claims suffering from the

25  same deficiency.  The *Greebel* plaintiffs alleged that pre-class period actions by the defendants

26  "continued into the Class Period but provide[d] no specifics about why the practice is thought to

27  have occurred during the Class Period." *Id*. at 202.  Accordingly, the court held that these

28  allegations were "not enough to support a strong inference of scienter."  *Id*. at 50; *see also Cats v.*

1   *Protection One, Inc*., No. CV-99-3755, 2001 U.S. Dist. LEXIS 25726, at **46-47 (C.D. Cal. June

2   4, 2001) ("[a]lleged accounting manipulation occurring prior to the Class Period cannot meet the

3   heightened pleading standards of the PSLRA in the absence of specific facts showing that the

4   practice continued during the Class Period").  Here, Plaintiff leaves it to the Court to speculate as

5   to whether or not "Redbook forecasts" were distributed to Defendants during the Class Period,

6   and whether those "Redbook forecasts" undermined JDSU's public statements.  Plaintiff cannot

7   rely on sheer speculation to meet her heightened pleading burden under the Reform Act.

8          Second, Plaintiff does not even attempt to establish that the "Redbook forecasts" of 2000

9   were inconsistent with statements made during the Class Period.  As the Complaint

10  acknowledges, JDSU announced reduced revenue projections three times in the months just

11  before the start of the Class Period, on January 25, February 13, and March 6, 2001.  (AC ¶¶ 139,

12  146, 151)  Any "red flags" regarding reduced customer demand in the "Redbook forecasts" of

13  2000 thus have no bearing on the sales forecasts issued after March 6, 2001.  Accordingly,

14  Plaintiff cannot demonstrate scienter on the basis of these allegations.

15         Plaintiff's Oracle system allegations are even more conclusory.  The Complaint asserts

16  that "[w]eekly sales and inventory reports from this Oracle database system were printed out and

17  distributed…to senior executives of JDS."  (AC ¶¶ 171, 173.)  Plaintiff fails to allege any dates

18  that these reports were distributed to, or reviewed by, any Defendant.  Nor does Plaintiff provide

19  any description, let alone an adequate description, of their contents.  As the Ninth Circuit

20  observed when dismissing similarly generic allegations, "[w]e would expect that a proper

21  complaint which purports to rely on the existence of internal reports would contain at least some

22  specifics from those reports."  *In re Silicon Graphics Inc. Sec. Litig*., 183 F.3d 970, 985 (9th Cir.

23  1999); *see also In re Vantive Corp. Sec. Litig*., 283 F.3d 1079, 1087-88 (9th Cir. 2002)

24  (dismissing 10b-5 claims where plaintiffs' allegations of internal reports "failed to cite to any

25  specific report" or "to mention any dates or contents of [any] reports"). Without such specifics,

26  Plaintiff cannot raise a strong inference based on the alleged Oracle reports that Defendants had

27  the requisite scienter at the time of the challenged Class Period statements.

28

1      **E.      JDSU's Restatement and Write-Downs Do Not Show Scienter.**

2              Plaintiff also contends that "[t]he sheer size of the goodwill and inventory writedowns"

3      raises a strong inference of scienter.  (AC ¶¶ 183-185.)  Even before the passage of the Reform

4      Act, however, the Ninth Circuit held that "[t]he mere publication of inaccurate accounting

5      figures, or a failure to follow GAAP, without more, does not establish scienter."  *In re Worlds of*

6      *Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994) (citations omitted).  A restatement of

7      financial results "is not enough to create the necessary strong inference of scienter."  *In re*

8      *Network Assocs., Inc. II Sec. Litig.*, No. C-00-4849, 2003 U.S. Dist. LEXIS 14442, at *49 (N.D.

9      Cal. Mar. 25, 2003); *see also In re ICN Pharms., Inc. Sec. Litig.*, 299 F. Supp. 2d 1055, 1065

10     (N.D. Cal. 2004) ("even a delinquent write-down of the impaired assets, without anything more,

11     does not state a claim of securities fraud, stating at best a bad business decision"); *CornerStone*

12     *Propane Partners*, 2005 U.S. Dist. LEXIS 1787, at **53-54, 58-60 (allegations of "egregiously

13     high levels of accounting disarray and disregard for truthful accounting" were insufficient to

14     establish scienter).

15     **F.      Plaintiff's Remaining Motive Allegations Fail to Show Scienter.**

16             Plaintiff claims that Defendants were motivated to issue false statements during the Class

17     Period in order to "finance and complete $35 billion in acquisitions, including OCLI, E-TEK and

18     SDL."  (AC ¶¶ 187, 227.)  The OCLI acquisition was completed on February 4, 2000, *more than*

19     *a year* before the start of the Class Period.  (*Id*. at ¶ 92.)  The E-TEK acquisition closed on June

20     30, 2000, (*id*. ¶ 106) and the SDL acquisition closed on February 13, 2001, more than two months

21     before the first allegedly false statement during the Class Period.  (*Id*. ¶ 186.)  These already-

22     completed acquisitions do not offer a rational motive for Defendants to knowingly issue false

23     statements during the Class Period, let alone raise a strong inference of scienter.  *See In re Flag*

24     *Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 270-71 (S.D.N.Y. 2004) (allegation that

25     company was motivated to make false statements in order to complete private placement of stock

26     was insufficient where private placement was completed before the allegedly false statements).

27     In addition, courts routinely reject boilerplate motive allegations of this sort.  *See Anderson v.*

28

1    *First Sec. Corp*., 249 F. Supp. 2d 1256, 1270 (D. Utah 2002) (alleged "desire to consummate a

2    corporate transaction or acquisition is insufficient to demonstrate scienter").

3        Lastly, Plaintiff points to "incentive compensation targets" that allegedly offered bonuses

4    and stock options to Defendants for meeting performance goals.  (AC ¶¶ 195-196.)   As another

5    court in this District observed, "such facts do not create the necessary inference of scienter."

6    *Berger v. Ludwick*, Nos. C-97-0728 & C-97-2347, 2000 U.S. Dist. LEXIS 12756, at * 29 (N.D.

7    Cal. Aug. 17, 2000) (*aff'd*, 15 Fed. Appx. 528 (9th Cir. Aug. 1, 2001)); see also *CornerStone*

8    *Propane Partners*, 2005 U.S. Dist. LEXIS 1787, at *61 ("[c]ompensation plans which reward

9    executives for performance similarly should not serve as a basis for allegations of fraud").

10   Plaintiff's boilerplate motive allegations therefore fail.

11                                          **CONCLUSION**

12       Because Plaintiff lacks standing to maintain a private right of action under Section 10(b)

13   and Rule 10b-5; because Plaintiff fails to allege that JDSU's statements were "in connection

14   with" her purchase of GOAL notes; because Plaintiff fails to allege particularized facts showing

15   either actual reliance or that an efficient market entitles her to a presumption of fraud on the

16   market; because Plaintiff fails to allege facts raising a strong inference of scienter, relying instead

17   on allegations concerning events well before the class period; and because these are not errors

18   that can be cured by amendment; and for the reasons stated above, the Complaint should be

19   dismissed with prejudice.

20

21

22

23

24

25

26

27

28

1    Dated: February 25, 2005                    MELVIN R. GOLDMAN
                                                 JORDAN ETH
2                                                TERRI GARLAND
                                                 ALISON M. TUCHER
3                                                RAYMOND M. HASU
                                                 MORRISON & FOERSTER LLP
4

5
                                        By:   /s/ Alison M. Tucher
6                                             Alison M. Tucher

7                                             Attorneys for Defendants
                                              JDS UNIPHASE CORPORATION,
8                                             JOZEF STRAUS, ANTHONY R.
                                              MULLER, and CHARLES J. ABBE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28