1   MELVIN R. GOLDMAN (BAR NO. 34097)
    JORDAN ETH (BAR NO. 121617)
2   TERRI GARLAND (BAR NO. 169563)
    ALISON M. TUCHER (BAR NO. 171363)
3   RAYMOND M. HASU (BAR NO. 200058)
    MORRISON & FOERSTER LLP
4   425 Market Street
    San Francisco, California  94105-2482
5   Telephone: (415) 268-7000
    Facsimile: (415) 268-7522
6   rhasu@mofo.com

7   Attorneys for Defendants
    JDS Uniphase Corporation, Jozef Straus,
8   Anthony R. Muller, and Charles J. Abbe

9                 UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                      OAKLAND DIVISION

12

13  SHIRLEY ZELMAN, TRUSTEE, F/B/O        Master File No. C-02-4656 CW
    SHIRLEY ZELMAN LIVING TRUST, on
14  behalf of plaintiff and all others similarly   **JDSU DEFENDANTS' REPLY**
    situated,                              **MEMORANDUM IN SUPPORT OF**
15                                         **MOTION TO DISMISS AMENDED**
                    Plaintiff,             **COMPLAINT**
16
          v.                              Date:      To Be Determined
17                                        Time:      To Be Determined
    JDS UNIPHASE CORPORATION, JOZEF       Judge:     Hon. William W Schwarzer
18  STRAUS, ANTHONY R. MULLER,
    CHARLES J. ABBE, and KEVIN
19  KALKHOVEN,

20                  Defendants.

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

**Page**

3   INTRODUCTION ........................................................................................................ 1

4   ARGUMENT .............................................................................................................. 1

5   I.      PLAINTIFF LACKS STANDING TO BRING THIS PRIVATE ACTION BECAUSE
6          SHE DID NOT TRADE IN JDSU SECURITIES. ............................................... 1

7          A.      That The JDSU Defendants' Alleged Misstatements Have "Some Connection"
                  to Plaintiff's Trading Does Not Justify Implying a Private Right of Action........... 2

8          B.      Plaintiff's "Standing" Cases Are Distinguishable In Any Event. ........................... 5

9   II.     PLAINTIFF FAILS TO ALLEGE RELIANCE ON JDSU'S STATEMENTS. ............... 6

10  III.    PLAINTIFF FAILS TO RAISE A STRONG INFERENCE OF SCIENTER. ................... 8

11         A.      The Court's January 6, 2005 Order In *In re JDSU* Does Not Establish Scienter
                  In This Action. ....................................................................................................... 9

12         B.      Defendants Are Not Liable For Statements Before The Class Period. ................. 10

13  IV.     JDSU'S STATEMENTS WITHIN THE CLASS PERIOD WERE NOT "IN
14         CONNECTION WITH" PLAINTIFF'S PURCHASE OF UBS SECURITIES. .............. 13

15  CONCLUSION ......................................................................................................... 15

16

17

18

19

20

21

22

23

24

25

26

27

28

JDSU Defs.' Reply Mem. I/S/O Mot. to Dismiss
Master File No. C-02-4656 CW
sf-1910769

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A&E Products Group, L.P. v. Mainetti USA Inc.*,
301 F. Supp. 2d 265, 270 n.2 (S.D.N.Y. 2004) ............................................................... 10

*Adam v. Silicon Valley Bancshares*,
No. C 93 20399 RMW (EAI), 1994 WL 374314 (N.D. Cal. Apr. 18, 1994) ................................. 14

*Alfus v. Pyramid Tech. Corp.*,
764 F. Supp. 598 (N.D. Cal. 1991) ................................................................................. 14

*Allison v. Brooktree*,
1998 U.S. Dist. LEXIS 21859 (S.D. Cal. Nov. 25, 1998) ..................................................... 13

*Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*,
189 F.3d 1017 (9th Cir. 1999) ......................................................................................... 6

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975) ............................................................................................... 2, 3, 6

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) ...................................................................................... 6

*Chang v. Moon*,
No. 92-733-MA, 1992 U.S. Dist. LEXIS 20524 (D. Or. Oct. 19, 1992) ..................................... 8

*Chu v. Sabratek*,
100 F. Supp. 2d 815 (N.D. Ill. 2000) ................................................................................. 8

*Crowell v. Ionics, Inc.*,
343 F. Supp. 2d 1 (D. Mass. 2004) ................................................................................... 14

*Freeman v. Laventhol*,
915 F.2d 193 (6th Cir. 1990) ........................................................................................... 7

*Graff v. Prime Retail, Inc.*,
172 F. Supp. 2d 721 (D. Md. 2001) ................................................................................. 10

*Greenberg v. Boettcher & Co.*,
755 F. Supp. 776 (N.D. Ill. 1991) ..................................................................................... 7

*Gross v. Summa Four, Inc.*,
93 F.3d 987 (1st Cir. 1996) ......................................................................................... 13, 14

*In re Aetna Inc. Sec. Litig.*,
34 F. Supp. 2d 935 (E.D. Pa. 1999) ................................................................................. 10

*In re Apple Computer, Inc. Sec. Litig.*,
243 F. Supp. 2d 1012, 1017 n.2 (N.D. Cal. 2002), *aff'd*, No. 03-16614,
2005 U.S. App. LEXIS 5511 (9th Cir. Apr. 4, 2005) (mem.) ............................................... 11

*In re Clearly Canadian Sec. Litig.,*
    875 F. Supp. 1410 (N.D. Cal. 1995)...................................................................11, 12

*In re Crown Am. Realty Trust Sec. Litig.,*
    No. Civ. A. 95-202J, 1997 WL 599299 (W.D. Pa. Sept. 15, 1997)................................11

*In re Cypress Semiconductors Sec. Litig.,*
    891 F. Supp. 1369 (N.D. Cal. 1995).................................................................................11

*In re FreeMarkets, Inc. Sec. Litig.,*
    No. 00-024, 2000 WL 33914766 (W.D. Pa. Dec. 26, 2000)............................................11

*In re IBM Corp. Sec. Litig.,*
    163 F.3d 102 (2d Cir. 1998)......................................................................................10, 11

*In re Kidder Peabody Sec. Litig.,*
    No. 94 Civ. 3954 (JFK), 1995 WL 590624 (S.D.N.Y. Oct. 4, 1995) ............................11

*In re MDC Holdings Sec. Litig.,*
    754 F. Supp. 785 (S.D. Cal. 1990) ................................................................................7, 8

*In re MTC Electronic Technologies Shareholders Litig.,*
    898 F. Supp. 974 (E.D.N.Y. 1995)..................................................................................11

*In re Nationsmart Corp. Sec. Litig.,*
    130 F.3d 309 (8th Cir. 1997)..............................................................................................8

*In re Quintel Entm't Inc. Sec. Litig.,*
    72 F. Supp. 2d 283 (S.D.N.Y. 1999)...............................................................................11

*In re Reliance Sec. Litig.,*
    135 F. Supp. 2d 480 (D. Del. 2001) ................................................................................11

*In re Scholastic Corp. Sec. Litig.,*
    252 F.3d 63 (2d Cir. 2001) ..............................................................................................11

*In re Seagate Tech. II, Sec. Litig.,*
    No. C-89-2493 (A)-VRW, 1995 U.S. Dist. LEXIS 2052 (N.D. Cal. Feb. 8, 1995) .......11

*In re Sun Healthcare Group, Inc. Sec. Litig.,*
    181 F. Supp. 2d 1283 (D.N.M. 2002)..............................................................................10

*In re Syncor Int'l Corp. Sec. Litig.,*
    327 F. Supp. 2d 1149 (C.D. Cal. 2004)...........................................................................11

*In re U.S. Aggregates, Inc. Sec. Litig.,*
    235 F. Supp. 2d 1063 (N.D. Cal. 2002)...........................................................................11

*In re Van Wagoner Funds, Inc. Sec. Litig.,*
    No. C 02-03383 JSW, 2004 U.S. Dist. LEXIS 24868 (N.D. Cal. July 27, 2004).............6

*In re Vantive Corp. Sec. Litig.,*
    283 F.3d 1079 (9th Cir. 2002)..........................................................................................13

JDSU Defs.' Reply Mem. I/S/O Mot. to Dismiss
Master File No. C-02-4656 CW
sf-1910769

iii

1   *In re Worldcom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC) & No. 03 Civ. 9499 (DLC),
2       2004 WL 1435356 (S.D.N.Y. June 28, 2004) ................................................................... 5

    *Jakobe v. Rawlings Sporting Goods Co.*,
3       943 F. Supp. 1143 (E.D. Pa. 1996) ....................................................................... 10, 11

4   *Kircher v. Putnam Funds Trust*,
        No. 04-1495 *et al.*, 2005 U.S. App. LEXIS 5372 (7th Cir. Apr. 5, 2005) ........................ 1
5
    *Laventhall v. Gen. Dynamics Corp.*,
6       704 F.2d 407 (8th Cir. 1983) ........................................................................................ 2

7   *Masnik v. Bolar Pharmaceuticals Co., Inc.*,
        No. 90-4086, 1991 U.S. Dist. LEXIS 10138 (E.D. Pa. July 17, 1991) ............................ 5
8
    *McGann v. Ernst & Young*,
9       102 F.3d 390 (9th Cir. 1996) ....................................................................................... 6

10  *McEwen v. Digitran Sys., Inc.*,
        160 F.R.D. 631 (D. Utah 1994) ................................................................................... 8
11
    *Mittman v. Rally's Hamburgers, Inc.*,
12      278 F. Supp. 2d 831 (W.D. Ky. 2003) ......................................................................... 11

13  *Moskowitz v. Mitcham Indus.*,
        No. H-98-1244, 1999 U.S. Dist. LEXIS 23293 (S.D. Tex. Sept. 29, 1999) ................... 10
14
    *Mott v. Dickinson and Co.*,
15      No. 92-1450-PFK, 1993 U.S. Dist. LEXIS 12345 (D. Kan. Aug. 13, 1993) ................... 8

16  *Muzinich & Co., Inc. v. Raytheon Co.*,
        No. CV-01-284-S-BLW (D. Idaho Apr. 30, 2002) ................................................... 2, 5
17
    *Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*,
18      369 F.3d 27 (2d Cir. 2004) ................................................................................*passim*

19  *Parklane Hosiery Co. v. Shore*,
        439 U.S. 322 (1979) ...................................................................................................... 9
20
    *Press v. Chem. Inv. Servs. Corp.*,
21      166 F.3d 529 (2d Cir. 1999) ....................................................................................... 15

22  *Press v. Chem. Inv. Servs. Corp.*,
        988 F. Supp. 375 (S.D.N.Y. 1997) ............................................................................ 14
23
    *Resolution Trust Corp. v. Keating*,
24      186 F.3d 1110 (9th Cir. 1999) ..................................................................................... 9

25  *Saxe v. E.F. Hutton & Co., Inc.*,
        789 F.2d 105 (2d Cir. 1986) ....................................................................................... 15
26
    *SEC v. Rana Research, Inc.*,
27      8 F.3d 1358 (9th Cir. 1993) .......................................................................................... 2

28

1

*Semerenko v. Cendant Corp.*,
   223 F.3d 165 (3d Cir. 2000) ........................................................................ 5

2

*Shaw v. Digital Equipment Corp.*,

3

   82 F.3d 1194 (1st Cir. 1996) ...................................................................... 10

4

*Stevelman v. Alias Research, Inc.*,
   No. 5:91-CV-682 (EBB), 2000 U.S. Dist. LEXIS 9115 (D. Conn. June 22, 2000) ....................... 12

5

*Urbach v. Sayles*,

6

   Civ. No. 91-1291, 1991 WL 236183 (D.N.J. Sept. 4, 1991) ......................................... 11

7

**STATUTES**

8

15 U.S.C.
   § 78u-4(b)(1) ...................................................................................... 13

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JDSU Defs.' Reply Mem. I/S/O Mot. to Dismiss
Master File No. C-02-4656 CW
sf-1910769

v

1       **INTRODUCTION**

2           Plaintiff argues that because the GOAL notes she purchased relate in some way to JDSU

3       stock, and because the Court denied defendants' motion to dismiss the second amended complaint in

4       *In re JDS Uniphase Corporation Securities Litigation*, Master File No. C-02-1486 ("*In re JDSU*"),

5       she, too, must have a claim against JDSU.  This novel argument fails for several reasons.  First, under

6       United States Supreme Court precedent, Section 10(b) standing should be construed narrowly.

7       Plaintiff offers no justification for the open-ended expansion of standing that she seeks.  Second,

8       Plaintiff cannot rely on the efficiency of the market for JDSU common stock to establish the

9       efficiency of the separate market for the GOAL notes.  The cases Plaintiff cites in support involve

10      securities directly convertible at the will of the security holder into common stock.  Plaintiff here

11      never held an equivalent right.  Finally, Plaintiff cannot rely on statements the JDSU Defendants

12      made months before the GOAL notes traded and Plaintiff's alleged Class Period began to meet the

13      scienter or "in connection with" requirements.  For each of these reasons, Plaintiff's Amended

14      Complaint ("Complaint" or "AC") should be dismissed, without leave to amend.

15      **ARGUMENT**

16  **I.    PLAINTIFF LACKS STANDING TO BRING THIS PRIVATE ACTION BECAUSE
         SHE DID NOT TRADE IN JDSU SECURITIES.**

17

18          The JDSU Defendants' opening brief established that a private plaintiff alleging that a

19      company made a fraudulent statement about its own operations has no standing to sue that company

20      over the misstatement, unless she traded in that company's securities.  (Mot. at 6-9.)  Separately, the

21      brief argued that Plaintiff had not pleaded facts establishing the proper causal nexus between JDSU's

22      statements about JDSU's operations and Plaintiff's purchase of GOAL notes from UBS (*id*. at 9-12),

23      and noted that the "in connection with" inquiry is distinct from the issue of standing.  *See Ontario*

24      *Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 34 (2d Cir.

25      2004) ("*Nortel*"); *see also Kircher v. Putnam Funds Trust*, No. 04-1495 *et al.*, 2005 U.S. App.

26      LEXIS 5372, at **12-13 (7th Cir. Apr. 5, 2005).  Plaintiff conflates the two issues, suggesting that

27      case law discussing a flexible application of the "in connection with" standard supports the liberal

28

1   approach she urges on standing.  In fact, as discussed below, the Supreme Court long ago embraced a

2   restrained approach on the issue of whether to imply a private right of action allowing a plaintiff to

3   sue for money damages under Section 10(b) of the Exchange Act.  *See Blue Chip Stamps v. Manor*

4   *Drug Stores*, 421 U.S. 723 (1975).  Plaintiff neither cites nor discusses this seminal case, but relies

5   instead on inapposite decisions.

6       **A.      That The JDSU Defendants' Alleged Misstatements Have "Some Connection" to**
            **Plaintiff's Trading Does Not Justify Implying a Private Right of Action.**
7

8          Plaintiff asserts that standing is proper whenever "there is some connection between" the

9   challenged statements and the plaintiff's trading.  (Opp'n at 7)  Expounding on this standard, Plaintiff

10  suggests that the connection is sufficient whenever "the impact of the misrepresentation on the

11  security is reasonably foreseeable."  (*Id*. at 8.)  As the Complaint does not allege that any of the

12  JDSU Defendants actually knew about the GOAL notes, she does not even meet the broad standard

13  she proposes.

14         In any event, Plaintiff has no authority for her rule, as *none* of the cases she cites discusses

15  standing for a private plaintiff to bring a Section 10(b) claim.  Indeed, one of Plaintiff's cases

16  involves an SEC enforcement action, rather than a private plaintiff.  *See SEC v. Rana Research, Inc.*,

17  8 F.3d 1358, 1362 (9th Cir. 1993).  The only one of Plaintiff's cases that discusses standing at all is

18  *Muzinich & Co., Inc. v. Raytheon Co.*, No. CV-01-284-S-BLW (D. Idaho Apr. 30, 2002), but the

19  standing issue there was whether a stockholder had standing to bring a derivative action in light of a

20  company's prior settlement of claims.  *Id*. at 3-4.  The court resolved that issue by determining that

21  the cause of action was direct, not derivative, and then moved on to discuss the "in connection with"

22  element of the Rule 10b-5 claim.  The Opposition confuses these two distinct analyses.  (Plaintiff's

23  "standing" cases are also distinguishable on other grounds (*see* Part I.B, *supra*).)[1]

---

24         [1] In a footnote, Plaintiff cites case law addressing whether an option holder has standing to
    sue the corporation whose shares underlie the option.  (Opp'n at 10 n.10.)  Plaintiff has not argued
25  that the GOAL notes should be analogized to options, nor could she since GOAL notes are not
    convertible at the holders' discretion to shares of JDSU stock.  (*See* Part II, *infra*.)  Aside from the
26  factual distinction, Plaintiff fails to note that the circuit courts are split on the question of whether an
    option holder has standing to sue the issuer of the related company's stock (*see Laventhall v. Gen.*
27  *Dynamics Corp.*, 704 F.2d 407 (8th Cir. 1983) (option traders lack standing)), and the Ninth Circuit
    has not decided the issue.

28

1    Although Plaintiff lacks authority for her proposed test, the law is not silent here.  Thirty

2    years ago the United States Supreme Court considered — and rejected — Plaintiff's argument that a

3    private plaintiff states a claim "under Rule 10b-5 whenever there is 'a logical nexus between the

4    alleged fraud and the sale or purchase of a security.'"  *See Blue Chip Stamps*, 421 U.S. at 736 n.8

5    (internal citation omitted).)  The question presented in *Blue Chip Stamps* was whether a private

6    plaintiff "may base its action on Rule 10b-5 of the Securities and Exchange Commission without

7    having either bought or sold the securities described in the allegedly misleading prospectus."  *Id.* at

8    727.  The Court reasoned that "it would indeed be anomalous to impute to Congress an intention to

9    expand the plaintiff class for a judicially implied cause of action [under Rule 10b-5] beyond the

10   bounds it delineated for comparable express causes of action," some of which required private

11   plaintiffs to have traded in the securities that are the subject of the misleading statements.  *Id*. at 736.

12   The Court accordingly adopted a rule that "limits the class of plaintiffs to those who have at least

13   dealt in the security to which the prospectus, representation, or omission relates."  *Id.* at 747.  Here,

14   the alleged representations and omissions related to JDSU securities, not GOAL notes.  The Court

15   recognized, in refusing to imply a private right of action, that its rule would "prevent[] some

16   deserving plaintiffs from recovering damages which have in fact been caused by violations of Rule

17   10b-5."  *Id*. at 738.  Plaintiff ignores *Blue Chip Stamps*, although the JDSU Defendants relied on it.

18   (*See* Mot. at 6, 8.)

19       As discussed in the opening brief, the Second Circuit has ruled that a plaintiff alleging that a

20   company made a misstatement about its own operations may sue that company only if the plaintiff

21   traded in securities issued by the company itself, no matter how foreseeable harm is to the plaintiff

22   from the misstatements.  *Nortel*, 369 F.3d at 34.  Plaintiff attempts to distinguish *Nortel* on two

23   grounds:  (1) that the securities at issue in that case (JDSU common stock) were not "convertible into

24   Nortel's stock," and (2) that there was no reason to believe that Nortel's stock price would affect the

25   price of JDSU's stock as much as the price of JDSU stock would affect the value of the GOAL notes.

26   (Opp'n at 11.)  On both issues, Plaintiff is mistaken.

27       First, although the securities at issue in *Nortel* were not "convertible into Nortel's stock,"

28   neither were the securities at issue in this case (GOAL notes) convertible into JDSU's stock.  An

1   investor who purchased GOAL notes had to be prepared to hold them until the notes matured, at

2   which point the investor might — or might not — receive JDSU stock in repayment of her principal.

3   (*See* Part II, *infra*.)

4           Second, there was ample reason to believe that Nortel's financial prospects would affect the

5   price of JDSU's stock at least as much as the price of JDSU's stock affected the value of the thinly-

6   traded GOAL notes.  Nortel was JDSU's largest customer.  *Nortel*, 369 F.3d at 29.  In addition, JDSU

7   held $2.5 billion worth of Nortel stock, which it had received in return for sale of a business unit to

8   Nortel.  *Id.*  Although other factors also affected the price of JDSU stock, the same is true for GOAL

9   notes.  As UBS explained to investors:

10                  IF THE MARKET PRICE OF JDS UNIPHASE CORPORATION
                    COMMON STOCK CHANGES, THE MARKET VALUE OF YOUR
11                  GOALS MAY NOT CHANGE IN THE SAME MANNER

12                  Owning the GOALs is not the same as owning common stock of the
                    JDS Uniphase Corporation[.]  Accordingly, the market value of your
13                  GOALs may not have a direct relationship with the market price of JDS
                    Uniphase Corporation common stock and changes in the market price
14                  of JDS Uniphase Corporation common stock may not result in a
                    comparable change in the market value of your GOALs.  If the price of
15                  the common stock of JDS Uniphase Corporation increases above the
                    initial price per share of $28.125, the market value of the GOALs may
16                  not increase.  It is also possible for the price of the common stock of
                    JDS Uniphase Corporation to increase while the market price of the
17                  GOALs declines.

18   (Request for Judicial Notice in Support of Opening Brief ("RJN"), Ex. B at S-6.)

19          One need not speculate about how closely prices for these securities were correlated.  A quick

20   review of the data reveals that the prices for Nortel and JDSU stock were more closely related than

21   were the prices of JDSU stock and GOAL notes.  During the class period alleged in *Nortel*, Nortel's

22   and JDSU's stock prices closed at the same place on the first day, the second day, and the last day of

23   the class period.  (*See* Declaration of Amy E. B. Kapp in Support of JDSU Defendants' Reply

24   Memorandum ("Kapp Decl.") at ¶ 12(a) & Ex. B.)  By contrast, during the Class Period alleged in

25   this Complaint, shares of JDSU common stock lost 66 percent of their value, while the GOAL notes

26   declined 39 percent.  (*Id.* at ¶ 12(b) & Ex. C.)  Plaintiff's efforts to distinguish *Nortel* are thus

27   unavailing.

28

1    **B.      Plaintiff's "Standing" Cases Are Distinguishable In Any Event.**

2    Not only do Plaintiff's cases fail to discuss standing for a private plaintiff to bring a 10b-5

3    claim, but they are all distinguishable on their facts.  Thus, they neither support her standing

4    argument, nor rebut the related, but distinct, point that JDSU's statements about JDSU operations

5    could not have been "in connection with" Plaintiff's trades in UBS securities.

6    Plaintiff relies heavily on *In re Worldcom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC) & No. 03

7    Civ. 9499 (DLC), 2004 WL 1435356 (S.D.N.Y. June 28, 2004), to support her standing argument,

8    citing it as authority for the proposition that "§ 10(b)'s prohibitions against fraud were never limited

9    to issuers of a security.  Rather, . . . any person who commits fraud that impacts materially the price

10   of a given security has liability."  (Opp'n at 2.)  But *WorldCom* does not discuss standing.  Moreover,

11   *WorldCom* allowed a private plaintiff *to proceed against the investment bank that issued TARGET*

12   *securities, Salomon Smith Barney Inc.*  It did not address whether the private plaintiff could proceed

13   against WorldCom, the publicly traded company whose stock price allegedly affected the value of

14   TARGET securities.  The analogous defendant here would be UBS, the issuer of the GOAL notes.

15   Whatever the merits of an action against UBS, *WorldCom* provides no authority for a private cause of

16   action under Section 10(b) *against JDSU*.

17   Plaintiff also relies on *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000), which is

18   distinguishable because the statements challenged there concerned the securities in which the plaintiff

19   traded.  In *Semerenko*, Cendant was in the process of merging with ABI and, after the merger fell

20   through, ABI shareholders sued Cendant.  They claimed that ABI stock had been artificially inflated

21   by Cendant's statements regarding the merger, in particular, statements regarding Cendant's intent to

22   purchase ABI's shares.  *Id.* at 170-71.  Here, because Plaintiff does not allege that JDSU made

23   statements regarding the GOALs, *Semerenko* does not support Plaintiff's claims.[2]

---

24   [2] *Muzinich & Co., Inc. v. Raytheon Co.*, No. CV-01-284-S-BLW (D. Idaho Apr. 30, 2002), is
     similarly distinguishable.  Shareholders in Washington Group International ("WGI") alleged that
25   Raytheon, which had sold a subsidiary to WGI, made false statements concerning the financial
     performance and prospects *of that subsidiary*.  The plaintiffs also alleged that Raytheon knew its false
26   statements would be included in WGI's SEC filings.  *Id.* at 8.  Here, in contrast, there is no allegation
     that the JDSU Defendants even knew about the GOAL notes, let alone knew that UBS's investors
27   would rely on JDSU's statements.  Likewise, *Masnik v. Bolar Pharmaceuticals Co., Inc.*,
     No. 90-4086, 1991 WL 138331, at *4 (E.D. Pa. July 17, 1991), is distinguishable because the *Masnik*
28                                                                           (Footnote continues on next page.)

1    Finally, the Ninth Circuit cases Plaintiff cites have no bearing on this case.  In *Ambassador*

2    *Hotel Co., Ltd. v. Wei-Chuan Inv*., 189 F.3d 1017 (9th Cir. 1999), and in *McGann v. Ernst & Young*,

3    102 F.3d 390 (9th Cir. 1996), the allegedly misleading statements concerned the finances of the

4    company in whose shares the plaintiff traded.  *Ambassador Hotel*, 189 F.3d at 1025; *McGann*, 102

5    F.3d at 394.  In sum, none of Plaintiff's cases counsel against applying *Blue Chip Stamps* and *Nortel*

6    here, with the result that Plaintiff lacks standing to pursue her claims.

7    **II.    PLAINTIFF FAILS TO ALLEGE RELIANCE ON JDSU'S STATEMENTS.**

8    The JDSU Defendants established that Plaintiff is not entitled to a presumption of reliance,

9    because the Complaint fails to allege specific facts showing that GOAL notes traded in an efficient

10   market.  (Mot. at 14-17.)  The JDSU Defendants noted that courts in the Ninth Circuit evaluate the

11   efficiency of a particular market by applying the five-factor test set forth in *Cammer v. Bloom*, 711 F.

12   Supp. 1264 (D.N.J. 1989).  (Mot. at 15.)  Under that standard, Plaintiff has the burden of alleging

13   facts such as trading volume, analyst coverage, and whether her securities had market makers or

14   arbitrageurs.  *Cammer*, 711 F. Supp. at 1278, 1286-87.  The JDSU Defendants pointed out that

15   Plaintiff failed to meet her burden.

16   Plaintiff does not dispute that she cannot meet the *Cammer* test, as she does not provide the

17   trading volume of her GOAL notes on any day, identify securities analysts who reported on GOALs,

18   state facts showing that trading information regarding the GOAL securities was widely available, or

19   describe any media coverage of the GOALs.  Plaintiff's failure to allege particularized facts

20   establishing an efficient market for her securities precludes her from any presumption of reliance.

21   *See, e.g., In re Van Wagoner Funds, Inc. Sec. Litig*., No. C 02-03383 JSW, 2004 U.S. Dist. LEXIS

22   24868, at *35 (N.D. Cal. July 27, 2004).[3]

23   ───────────────────────────

(Footnote continued from previous page.)

24   defendants were alleged to have made false statements regarding a product manufactured and
     marketed by a rival drug company, whose shareholders sued.  *Id*. at *13.  Here, Plaintiff does not

25   allege that JDSU made statements regarding the GOAL notes.

26   [3] The undeveloped character of the GOALs market is illustrated by the relative inaccessibility
     of trading data for that market.  In contrast to the availability of information regarding widely-traded

27   securities, information regarding the GOALs market is accessible only with substantial effort.  (*See*
     Kapp. Decl. at ¶¶ 3-5.)  Trading data demonstrate that the market for GOALs was a perfect example

28                                                                   (Footnote continues on next page.)

1    Rather than pleading the requisite facts, Plaintiff contends that the GOALs market was

2  efficient because the notes were "convertible directly" into a stock that traded in an efficient market,

3  namely JDSU stock.  (Opp'n at 14.)  This argument fails for three reasons.

4    First, Plaintiff's GOAL notes were not "convertible directly" into JDSU stock.  As Plaintiff's

5  own allegations demonstrate, she never had the option of "converting" her GOALs into JDSU stock.

6  (AC ¶¶ 33-34.)  Instead, depending on the price of JDSU stock on the maturity date of her notes, she

7  would receive either her $1,000 principal or a fixed amount of JDSU stock.[4]  (*Id*.)  If she received

8  JDSU stock, it would only be on the maturity date of the GOAL notes, September 9, 2002, more than

9  a year after the end of the Class Period.  (*Id*.)  Plaintiff asserts that GOAL note holders "understood"

10  that their notes would be exchanged for JDSU stock (Opp'n at 12), but any such understanding would

11  have been premature before the notes' maturity date, since nobody knew until then whether the

12  principal would be repaid in cash or in stock.  (AC ¶ 33.)  The lack of convertibility of GOAL notes

13  was clearly set forth in the UBS Prospectus Supplement, which advised Plaintiff, "you should be

14  willing to hold your GOALs until the maturity date."  (RJN Ex. B at S-5.)

15    Second, as the JDSU Defendants pointed out, plaintiffs must support claims of market

16  efficiency with facts pertaining to the *particular securities* at issue.  *See In re MDC Holdings Sec.*

17  *Litig*., 754 F. Supp. 785, 805 (S.D. Cal. 1990);[5] *Greenberg v. Boettcher & Co*., 755 F. Supp. 776, 782

18  (Footnote continued from previous page.)

19  of a thinly-traded, inefficient market.  (*See id*. Ex. A.)  Throughout their entire 1 ½ year trading history, GOAL notes never traded more than four times in a single day or more than eleven times in a

20  single week.  Indeed, entire weeks passed without a single purchase or sale of GOALs.  This barely-perceptible trickle of trading activity – which ceased altogether for weeks at a time – confirms that

21  Plaintiff's securities were not traded in a well-developed, efficient market.  *See, e.g., Freeman v. Laventhol*, 915 F.2d 193, 198 (6th Cir. 1990) (a "developed market is one which has a relatively high

22  level of activity and frequency, and for which trading information (*e.g.*, price and volume) is widely available") (citation omitted).

23    [4] Indeed, GOAL stands for "Geld Oder Aktien Lieferung," which, translated from the German, means "Cash or Share Delivery."  (Kapp Decl. at ¶ 2.)

24

25    [5] Plaintiff attempts to distinguish *MDC Holdings* by asserting that the securities at issue in that case were not "convertible into heavily-traded common stock."  (Opp'n at 14.)  First, neither

26  were Plaintiff's GOAL notes.  Second, at least some of the securities at issue in *MDC Holdings* were indeed convertible.  *See* 754 F. Supp. at 804 (listing types of subordinated notes purchased by the

27  plaintiffs during the class period, including "subordinated *exchangeable* variable rate notes") (emphasis added).

28

1  (N.D. Ill. 1991).  Plaintiff relies in response on two district court cases from outside this jurisdiction,

2  neither of which applies.  In both *Chu v. Sabratek*, 100 F. Supp. 2d 815 (N.D. Ill. 2000), and *McEwen*

3  *v. Digitran Sys., Inc.*, 160 F.R.D. 631 (D. Utah 1994), the plaintiffs held securities which were

4  convertible *at the will of the holder* into common stock.  *See Chu*, 100 F. Supp. 2d at 826.[6]  In

5  contrast, GOAL note holders never had the option of converting their securities into JDSU common

6  stock, so there is no basis for "infer[ring] the existence of an efficient market" for GOALs from the

7  purported existence of an efficient market for JDSU stock.  *Id*.

8       Third, Plaintiff does not dispute that the price of GOALs in the IPO was determined by the

9  GOALs issuer, UBS, and not by the market.  (Opp'n at 14.)  By definition, therefore, the notes were

10  not sold in an efficient market.  *See MDC Holdings*, 754 F. Supp. at 805-06 (refusing to extend fraud

11  on the market theory to new securities); *see also Chang v. Moon*, No. 92-733-MA, 1992 U.S. Dist.

12  LEXIS 20524, at *25 (D. Or. Oct. 19, 1992); *Mott v. Dickinson and Co*., No. 92-1450-PFK, 1993

13  U.S. Dist. LEXIS 12345, at *5 (D. Kan. Aug. 13, 1993).  Instead, plaintiff claims that she is entitled

14  to a presumption of reliance because the redemption structure for the GOAL notes referred to JDSU

15  securities, whose price she argues was determined by an efficient market.  The price, terms, and

16  structure of the GOAL notes, however, were set purely by UBS; no market had anything to do with it.

17       Finally, Plaintiff also asserts that her allegation regarding actual reliance is "not merely

18  conclusory."  (Opp'n at 14.)  Under Rule 9(b), she is required to plead specific facts showing that she

19  relied on the challenged statements, *In re Nationsmart Corp. Sec. Litig*., 130 F.3d 309, 322 (8th Cir.

20  1997), and she is unable to point to any specific allegations in the Complaint.  Accordingly, her

21  actual reliance argument fails.

22  **III.   PLAINTIFF FAILS TO RAISE A STRONG INFERENCE OF SCIENTER.**

23       Plaintiff does not dispute that, to survive dismissal, her Complaint must allege particularized,

24  *contemporaneous* facts giving rise to a strong inference that the purportedly adverse facts were

25  _____

26  [6] The *McEwen* opinion does not indicate whether the plaintiff's preferred stock in Digitran
   Systems, Inc. was convertible at the will of the holder into Digitran common stock, but a judicially-
   noticeable SEC filing by Digitran confirms that "[c]onvertibility of any preferred stock issued [by the
27  company] may be exercised at the option of the holder."  (*See* Kapp Decl., Ex. F at F-19.)

28

JDSU Defs.' Reply Mem. I/S/O Mot. to Dismiss
Master File No. C-02-4656 CW
sf-1910769

8

1    known by the JDSU Defendants at the time of the challenged statements.  Nor does she dispute that

2    only two of the statements challenged in the Complaint were made during the Class Period.[7]  In fact,

3    Plaintiff does not take issue with the JDSU Defendants' point that the Complaint fails to allege

4    contemporaneous facts raising a strong inference of scienter as to those two statements.  Instead,

5    Plaintiff contends that this argument "ceases to matter" because (1) the Court's January 6, 2005 order

6    in *In re JDSU* "upheld" a different complaint (Opp'n at 22); and (2) the JDSU Defendants are liable

7    for statements before the Class Period, for which scienter can be established, because they engaged in

8    a "single, continuing fraudulent course of conduct" (Opp'n at 22) that was "alive in the market" at the

9    start of the Class Period (Opp'n at 17).  As shown below, these contentions fail.

10        **A.    The Court's January 6, 2005 Order In *In re JDSU* Does Not Establish Scienter In**
               **This Action.**
11

12            Plaintiff contends that the Complaint adequately alleges scienter because "*this* Court

13    determined that *these* allegations adequately pled these defendants' scienter during the entire 21-

14    month class period" asserted in *In re JDSU*.  (Opp'n at 15 (emphasis in original).)  Plaintiff seems to

15    argue that the doctrine of collateral estoppel precludes the JDSU Defendants from contesting her

16    scienter allegations.  *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979) ("Offensive

17    use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an

18    issue the defendant has previously litigated unsuccessfully in an action against another party").

19            To show that collateral estoppel applies to the JDSU Defendants' scienter arguments, Plaintiff

20    must show, among other things, that the contested issues "were actually litigated and necessary to

21    support" the January 6, 2005 ruling in *In re JDSU*.  *Resolution Trust Corp. v. Keating*, 186 F.3d

22    1110, 1114 (9th Cir. 1999).  Plaintiff does not, and cannot, meet that requirement.  Plaintiff fails to

23    _____

24            [7] Plaintiff contends for the first time in her Opposition that JDSU made more than two
      statements during the Class Period, as a result of posting its 1999 and 2000 SEC filings on the
25    Company's web site throughout the Class Period.  (Opp'n at 20.)  Plaintiff cites no authority for this
      position.  If, for purposes of the securities laws, the date that a company "made" a particular
26    statement was any date the statement was available on the company's web site, the statute of
      limitations would be rendered a dead letter, and JDSU could be sued today for statements dating back
      to 1996.  It cannot be that JDSU must choose between making historical information available to its
27    investors and protecting itself from never-ending liability.

28

1    cite any portion of the Court's January 6, 2005 order holding that scienter had been adequately

2    pleaded as to any particular statements during that class period, let alone as to any statements made in

3    the last four months of that class period.

4         The absence of such findings is hardly surprising.  When ruling on a motion to dismiss, courts

5    will ordinarily consider only the grounds for dismissal presented in the motion.  *See, e.g.*, *A&E*

6    *Prods. Group, L.P. v. Mainetti USA Inc.*, 301 F. Supp. 2d 265, 270 n.2 (S.D.N.Y. 2004).  In *In re*

7    *JDSU*, the JDSU Defendants did not address whether the allegations established scienter for

8    particular statements made in April and May 2001.  Instead, the argument addressed allegations

9    concerning an earlier period, primarily the summer of 2000.  (*See* JDSU Defendants' Motion to

10   Dismiss Second Amended Complaint at 16-21, filed March 9, 2004, in *In re JDSU*.)  Accordingly,

11   Judge Wilken's order addressed only those arguments, finding that they did not warrant dismissal.

12   The order did not resolve all possible grounds for dismissal that the JDSU Defendants *might* have

13   raised in that action, nor can it be read as an all-encompassing finding that the allegations sufficiently

14   pleaded scienter under any analysis.  Because the question of whether scienter had been pleaded as to

15   statements in April and May 2001 was not actually litigated, Plaintiff cannot invoke Judge Wilken's

16   order to shield herself from the JDSU Defendants' arguments.

17        **B.    Defendants Are Not Liable For Statements Before The Class Period.**

18        Unable to plead contemporaneous facts raising a strong inference of scienter as to statements

19   made on April 24 and May 10, 2001, Plaintiff argues that the JDSU Defendants are liable for all the

20   statements challenged in the Complaint, including those made months before the start of her Class

21   Period.  (Opp'n at 18-21.)  This argument is wrong as a matter of law.  Although Plaintiff

22   characterizes the JDSU Defendants' argument as "[l]egally [u]nsupported" (Opp'n at 18), the

23   overwhelming weight of authority supports the proposition that Rule 10b-5 defendants are not liable

24   for pre-class period statements.[8]

25   _____

26        [8] *See, e.g., In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998); *Shaw v. Digital
     Equip. Corp.*, 82 F.3d 1194, 1217 n.31 (1st Cir. 1996); *In re Sun Healthcare Group, Inc. Sec. Litig.*,
     181 F. Supp. 2d 1283, 1293 (D.N.M. 2002); *Graff v. Prime Retail, Inc.*, 172 F. Supp. 2d 721, 723 (D.

27   Md. 2001); *Moskowitz v. Mitcham Indus.*, No. H-98-1244, 1999 U.S. Dist. LEXIS 23293 (S.D. Tex.
     Sept. 29, 1999); *In re Aetna Inc. Sec. Litig.*, 34 F. Supp. 2d 935, 945-46 (E.D. Pa. 1999); *Jakobe v.*

28                                                                    (Footnote continues on next page.)

1    By contrast, with the single exception of an outlier case from the Western District of

2  Pennsylvania, *In re Crown Am. Realty Trust Sec. Litig.*, No. Civ. A. 95-202J, 1997 WL 599299

3  (W.D. Pa. Sept. 15, 1997), none of the cases relied on by Plaintiff addresses whether statements made

4  months before the class period are actionable under Rule 10b-5.  For example, *In re FreeMarkets,*

5  *Inc. Sec. Litig.*, No. 00-024, 2000 WL 33914766 (W.D. Pa. Dec. 26, 2000), does not discuss the

6  timing of the challenged statement at all, and in any event granted the motion to dismiss.  *Id.* at *11.

7  Similarly, *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480 (D. Del. 2001), does not speak to whether

8  Rule 10b-5 liability can attach to pre-class period statements.  It holds that a director's statements

9  made *during the class period* could have caused plaintiffs to purchase company stock.[9]

10   In any event, courts within the Ninth Circuit have uniformly refused to find statements made

11  before the class period actionable.  *See In re Cypress Semiconductors Sec. Litig.*, 891 F. Supp. 1369,

12  1374 n.2 (N.D. Cal. 1995); *In re Seagate Tech. II, Sec. Litig.*, No. C-89-2493 (A)-VRW, 1995 U.S.

13  Dist. LEXIS 2052, at *10 (N.D. Cal. Feb. 8, 1995); *In re Clearly Canadian Sec. Litig.*, 875 F. Supp.

14  1410, 1420 (N.D. Cal. 1995); *see also In re Apple Computer, Inc. Sec. Litig.*, 243 F. Supp. 2d 1012,

15  1017 n.2 (N.D. Cal. 2002), *aff'd*, No. 03-16614, 2005 U.S. App. LEXIS 5511 (9th Cir. Apr. 4, 2005)

16  (mem.) (questioning relevance of alleged events that occurred before the class period).[10]

---

17  (Footnote continued from previous page.)

18  *Rawlings Sporting Goods Co*., 943 F. Supp. 1143, 1155 n.10 (E.D. Pa. 1996); *Mittman v. Rally's Hamburgers, Inc*., 278 F. Supp. 2d 831, 839 n.4 (W.D. Ky. 2003).

19

20   [9] The remaining cases relied on by Plaintiff are likewise inapposite.  In *Urbach v. Sayles*, Civ. No. 91-1291, 1991 WL 236183 (D.N.J. Sept. 4, 1991), the court found that the complaint "may have misspoken" about the date when the alleged fraud began.  *Id.* at *9.  *In re Quintel Entm't Inc. Sec. Litig*., 72 F. Supp. 2d 283 (S.D.N.Y. 1999), expressly stated that "defendants are correct in that they are 'liable only for those statements made during the class period.'"  *Id.* at 290 (quoting *In re IBM Corp. Sec. Litig*., 163 F.3d at 107).  Similarly, the courts in *In re Syncor Int'l Corp. Sec. Litig*., 327 F. Supp. 2d 1149, 1160-61 (C.D. Cal. 2004); *In re Scholastic Corp. Sec. Litig*., 252 F.3d 63, 72 (2d Cir. 2001); and *In re U.S. Aggregates, Inc. Sec. Litig*., 235 F. Supp. 2d 1063, 1065 n.1 (N.D. Cal. 2002), did not find that defendants could be liable for pre-class period statements, but instead held that such statements could be relevant to liability for statements during the class period.  Finally, to the extent that *In re MTC Electronic Technologies Shareholders Litig*., 898 F. Supp. 974 (E.D.N.Y. 1995), and *In re Kidder Peabody Sec. Litig*., No. 94 Civ. 3954 (JFK), 1995 WL 590624 (S.D.N.Y. Oct. 4, 1995), found that defendants could be liable for pre-class period statements, those holdings are contrary to later controlling authority from the Second Circuit.  *See IBM Corp*., 163 F.3d at 107.

27   [10] Plaintiff claims that *Seagate* has been "roundly criticized," but cites only a single, out-of-circuit case.  (Opp'n at 20.)  She asserts that *Clearly Canadian* does not apply since the defendants in

28                                                               (Footnote continues on next page.)

1    Plaintiff also suggests that, if she chose, she could plead her way around this problem by

2    "simply altering *two words* in her complaint" to designate October 1999, rather than March 2001, as

3    the start of the Class Period.  (Opp'n at 18 (emphasis in original).)  There are at least two flaws in this

4    argument.  First, it would be absurd for Plaintiff to contend that, in making her March 2001 purchase

5    of GOAL notes, she relied on JDSU's statements from as long as seventeen months before that

6    purchase.  (*See* Mot. at 4.)

7    Second, it would be equally absurd for Plaintiff to designate a twenty-one-month Class Period

8    in which no purported class members could have suffered damages until the last four and a half

9    months of the Class Period.  It is axiomatic that "[n]o class period may commence prior to the earliest

10   date on which plaintiff can properly allege all the elements of his prima facie case.  Prior to that time,

11   plaintiff as a matter of law has no cognizable cause of action."  *Stevelman v. Alias Research, Inc*.,

12   No. 5:91-CV-682 (EBB), 2000 U.S. Dist. LEXIS 9115, at *16 (D. Conn. June 22, 2000).  The

13   members of the class Plaintiff seeks to represent could not have been damaged by statements

14   challenged in the Complaint until they purchased GOAL notes – March 8, 2001, at the earliest.  (AC

15   at ¶ 31.)  Therefore, because damages are an essential element of a Rule 10b-5 claim, Plaintiff cannot

16   properly assert a Class Period beginning before March 8, 2001.

17   Plaintiff dismisses the JDSU Defendants' application of well-established legal rules as

18   "fetishism" (Opp'n at 16), and argues instead for a novel legal theory: that the pre-class period

19   statements were actionable because they were "alive in the market" at the beginning of the Class

20   Period (*id*. at 17) and were part of a "single, continuing course of fraudulent conduct that began

21   before plaintiff made her security purchase and continued for several months after that purchase."

22   (*Id*. at 19 (emphasis omitted).)  These conclusory assertions only point to the fundamental defect of

23   the Complaint – the absence of any particularized, contemporaneous facts establishing that the JDSU

24   

25   (Footnote continued from previous page.)

26   that case were not liable for pre-class period statements only because their statements were irrelevant
     to the plaintiff's claims.  (*Id*. at 18-19.)  Plaintiff has it backwards, however: the court found that the
     statements were irrelevant to the plaintiff's claims *because they were outside the class period*.  *See*

27   *Clearly Canadian*, 875 F. Supp. at 1420.

28   

JDSU Defs.' Reply Mem. I/S/O Mot. to Dismiss
Master File No. C-02-4656 CW
sf-1910769

12

1   Defendants made fraudulent statements during the Class Period.  As pointed out in the opening brief,

2   Plaintiff has the burden of raising a strong inference of scienter as to *those* particular statements.  *See*

3   15 U.S.C. § 78u-4(b)(1)(B); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1085 (9th Cir. 2002)

4   (noting that plaintiffs must "allege contemporaneous facts in sufficient detail and in a manner that

5   would create a strong inference that the alleged adverse facts were known *at the time of the*

6   *challenged statements*") (emphasis added).[11]  Plaintiff cannot meet that burden by positing allegedly

7   fraudulent statements made long before the start of the Class Period and asserting, without factual

8   support, that fraudulent conduct continued into the Class Period.  *See Allison v. Brooktree*, 1998 U.S.

9   Dist. LEXIS 21859, at *36 (S.D. Cal. Nov. 25, 1998) (finding that testing report dated in January

10  1995 did not raise an inference as to defendants' state of mind five months later, when the disputed

11  statements were made); *Gross v. Summa Four, Inc.*, 93 F.3d 987, 995 (1st Cir. 1996) (report

12  indicating delays in resolving customer issues did not raise an inference of scienter, because the

13  report did not show that the company was still experiencing these delays when it issued a press

14  release six weeks later).

15  **IV.    JDSU'S STATEMENTS WITHIN THE CLASS PERIOD WERE NOT "IN**
        **CONNECTION WITH" PLAINTIFF'S PURCHASE OF UBS SECURITIES.**
16

17          Plaintiff does not, and cannot, dispute that the only two allegedly false statements during the

18  Class Period were more than six weeks *after* her purchase of GOAL notes.  Nor does she address the

19  authorities cited by the JDSU Defendants, including controlling Ninth Circuit authority, which

20  preclude liability for statements made after a plaintiff's purchase of securities, on the grounds that, as

21  a matter of law, such statements are not "in connection with" that purchase.  (Mot. at 13 (citing

22  cases).)  Instead, Plaintiff declares that this argument "simply ceases to be of interest or applicability

23  here" because the JDSU Defendants are liable for pre-Class Period statements.  (Opp'n at 21.)  As

24  discussed above, this assertion fails.

25  _____

26          [11] Plaintiff concedes that the relevant inquiry in determining the adequacy of scienter
    allegations is whether they establish the requisite state of mind at the time of the alleged
27  misstatement.  (*See* Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant
    Kalkhoven's Motion to Dismiss the Amended Complaint at 9 n.10.)

28

1    Plaintiff also claims that the JDSU Defendants' position is "routinely rejected by courts."

2  (Opp'n at 21.)  *None* of the cases relied on by Plaintiff, however, supports this assertion.[12]  Instead,

3  the courts in most of those cases addressed a completely different issue: whether a lead plaintiff who

4  purchased stock *after at least one of the challenged class period statements* – and thus has standing in

5  her own right – can sue on behalf of the entire purported class, even where some of the challenged

6  statements were made after that lead plaintiff's last purchase.

7    In *Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598 (N.D. Cal. 1991), for example, the lead

8  plaintiff challenged statements made between October 31, 1988, and June 5, 1989.  *Id.* at 600.  The

9  defendants argued that the lead plaintiff could not represent class members whose purchases were

10  after January 9, 1989, the date of her last purchase.  The court disagreed, holding that, "*[w]hile the*

11  *representative must be a member with standing*, the [plaintiff] class is not confined to that period

12  preceding [plaintiff's] final purchase."  *Id.* at 606 (emphasis added).  The remaining authorities cited

13  by Plaintiff reach similar results in response to similar arguments.

14    Critically, in each of these cases, one or more of the challenged statements were made *before*

15  a lead plaintiff purchased securities.[13]  These authorities are thus inapplicable here, because Plaintiff

16  is not a "member with standing," as her only alleged purchase of GOAL notes was six weeks before

17  the first challenged Class Period statement.  *Alfus*, 764 F. Supp. at 600; *see also Gross*, 93 F.3d at

18  993 (dismissing claim of lead plaintiff who purchased stock one month before allegedly false

19  statement because that plaintiff "cannot maintain an action on behalf of class members to redress an

20  injury for which he has no standing in his own right").[14]

_____

21    [12] Indeed, one of those decisions expressly states that "[m]isleading statements and omissions

22  made after a plaintiff's purchase of stock normally cannot form the basis of that individual's Section
10(b) action because such acts were not performed 'in connection with' plaintiff's purchase."  *Alfus*
*v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 605 (N.D. Cal. 1991).

23

24    [13] *See, e.g.*, *Adam v. Silicon Valley Bancshares*, No. C-93-20399 RMW (EAI), 1994 WL
374314, at *1 (N.D. Cal. Apr. 18, 1994); *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 13 (D. Mass.
2004).

25

26    [14] Plaintiff also attempts to rebut the JDSU Defendants' argument that any relationship
between JDSU's statements about JDSU's operations and Plaintiff's purchase of a UBS security was

27  too tangential to satisfy Rule 10b-5's "in connection with" requirement.  She fails because her cases
are factually distinguishable, *see* Part I.B, *supra*, and because she mischaracterizes the authorities
cited by the JDSU Defendants.  To cite but two examples, Plaintiff claims that *Press v. Chem. Inv.*

28                                                      (Footnote continues on next page.)

1

**CONCLUSION**

2        For the foregoing reasons, and because Plaintiff cannot allege facts to overcome her

3  Complaint's defects, the JDSU Defendants' motion should be granted and the Complaint dismissed

4  with prejudice.

5

Dated: April 15, 2005                          MORRISON & FOERSTER LLP

6

7

                                        By:    /s/ Alison M. Tucher (e-filing signature)
8                                              Alison M. Tucher

9                                          Attorneys for JDSU Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

_____

25  (Footnote continued from previous page.)

26  *Servs. Corp.*, 988 F. Supp. 375 (S.D.N.Y. 1997), was reversed by the Second Circuit (Opp'n at 12),
but it was affirmed.  *Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 537 (2d Cir. 1999).  And *Saxe v.
27  E.F. Hutton & Co., Inc.*, 789 F.2d 105, 109-10 (2d Cir. 1986), found that the "in connection with"
requirement was satisfied under the Commodities Exchange Act but *not* on the Rule 10b-5 claim.

28